234 S.W.2d 335 (1950)
SILVEY
v.
HERNDON.
No. 6955.
Springfield Court of Appeals. Missouri.
November 16, 1950.
*336 Rogers & Rogers, Gainesville, for appellant.
J. Bernie Lewis, Ava, for respondent.
VANDEVENTER, Presiding Judge.
This is a suit on an account. From a judgment in favor of plaintiff in the sum of $965.20, defendant appeals.
Plaintiff was engaged in the feed business at Ava, Missouri and defendant was one of his customers, living out in the country some eleven miles. Plaintiff sold shorts, chicken feed, hog fattening, egg mash, crushed corn and feed, and bought eggs and produce. The period for which the account was alleged to have run was from July 18, 1947 until May 15, 1948. Plaintiff's evidence showed that defendant and her son would come into his place of business and buy shorts, pulverized corn, salt and other kinds of stock feed, which, on many occasions plaintiff, in person, or by his employees would deliver to her farm and place in her barn. Plaintiff's system of bookkeeping was very simple. At the time a purchase was made, an invoice was made with a carbon copy. This invoice showed the date, the purchaser, the articles sold and the price. The copy was on yellow paper and was given to the customer or laid down on the desk where the customer could get it. The original was kept by the merchant until the goods sold were paid for and was then delivered to the customer. Partial payments on account were recorded in the same manner. Testimony was introduced, without objection, to show that this was the customary method of keeping feed store accounts in that community. The various items of the account were introduced in evidence by the plaintiff, each showing the date of the purchase, the kind of feed purchased and the price. The total amount from July 18th to *337 December 30, 1947, inclusive, was $671. The amount sold in 1948 was $703.20, making a total of $1374.20. Plaintiff was given credit for payments beginning July 25, 1947 and ending May 11, 1948 of a total of $409. Of this sum $190 was for 1947. These deliveries to her farm were made at defendant's request. Sometimes the feed would be ordered by the defendant, sometimes by her son, at other times both would be present, but all the times it was delivered to her farm and stored in her barn. There were two accounts, the one in question and one for "Dairy feed," which was kept paid up upon receipt of the "milk checks." Defendant's son's name was John Nokes and relative to John's agency for the purchase of feed, plaintiff testified on cross examination:
"Q. January 24, eight sacks of pulverized corn, who ordered that? A. She either sent in for it or came for it in person.
"Q. Did she or would she send an order for it? A. When the boy would come, he would say, so many sacks for mother and so much dairy feed.
"Q. Would he tell you to send it out? A. Sometimes.
"Q. Did she tell you to sell him merchandise when he came in and charge it to her? A. If she ordered it.
"Q. Well, did she order any of it? A We think she did.
"Q. Did she ever tell you at anytime John came in there to buy merchandise to charge it to her? A. I am pretty sure she did.
"Q. Are you sure? A. Yes, sir.
"Q. These items you have charged to her, if John bought them, you are going on the assumption he had authority from his mother to buy them? A. Yes, sir."
Wilbur K. Klineline, an employee driver for plaintiff during 1947, testified:
"Q. Did you ever deliver any feed to Mrs. Herndon? A. Yes, sir."
Lawrence Tate, another driver for plaintiff in 1948 testified:
"Q. Did you ever deliver any feed to Mrs. Herndon? A. Yes, sir. * * *
"Q. Lawrence, did you haul feed to her farm? A. Yes.
"Q. And unloaded it and put it in her barn? A. Yes."
Plaintiff testified, when shown a check for $20 marked, "In full for all feed."
"Q. You don't know that is dairy or not? A. No, I remember at one time she did give me a check having on it, `Paid in full', which was for dairy feed."
Defendant's answer to plaintiff's petition was a general denial. Her testimony was that on December 30, 1947, she went to the store of the plaintiff and told him she wanted to pay the balance of her account. He told her the balance due was $20 and she paid it. At the trial she produced a check in the handwriting of her daughter-in-law for the sum of $20 and the check bore a notation, "Payment in full for all feed." This check was introduced in evidence. When asked on cross examination if there had been an erasure on the check, defendant said: "No, sir, you can go over to the bank and get the photostatic copy of it."
Defendant then offered as a witness O. C. Reynolds, cashier of the Bank of Ava, in which this check had been deposited by plaintiff. Mr. Reynolds testified he had a machine in his bank that photographed all checks on out of town banks and that a picture of this particular check had been taken on January 10, 1948. It was on an out of town bank, having been written on the Farmers and Merchants Bank in Springfield. Mr. Reynolds first stated that the check had on it the notation "Paid in full for dairy feed". He then corrected this statement and said the notation showed "For all feed". On cross examination, he also said the picture at the bank was exactly like the check that was presented to him for examination and it stated "Paid in full for all feed." Some question was raised as to whether there had been an erasure on the check after it had passed into his bank and was photographed, and, at the suggestion of plaintiff's counsel and with the acquiescence of the court, witness Reynolds took the sheriff over to the bank and together they viewed the picture of the *338 check and they discovered that while the check bore the notation "Paid in full for all feeds" the photograph showed "Paid in full for dairy feed." The testimony further showed that the check, after its release by the bank upon which it was drawn, had been in the possession of the defendant.
Defendant further testified that she had never authorized her son, John Nokes, to make any purchases for her at all in 1948 and he testified to the same effect. He further stated that he had made purchases for himself during 1948 but that he always paid for them when he received his milk check and that he did not owe the plaintiff anything.
Mrs. Maxine Nokes, the wife of defendant's son, testified that she wrote the $20 check and that defendant made a notation on it, "Paid in full for all feed." That defendant, at the time, told plaintiff she wanted to pay her account. She denied that she had anything charged to defendant's account and that whatever she and her husband bought was paid for out of the milk check. She testified positively that the day the check was written and given to plaintiff that it bore the notation "Paid in full for all feed."
Defendant testified that the reason she paid her account in full in December, 1947, was that she intended to go to California to visit her son, who, it appears, was returning from China. She was gone about 5 weeks. The record shows that no objection was made when the court sent the banker and the sheriff over to the bank to examine the photograph and no objection was made when they came into court and testified as to what the photograph showed.
Three grounds of error are assigned on the part of appellant. They are: 1. There is no evidence in the record showing defendant bought any merchandise from plaintiff in 1948 or that anyone bought such merchandise for her. 2. The court committed error in instructing upon the theory of agency because there was no evidence of such. 3. Previous to the trial, witness Reynolds had examined the picture of the check and told the defendant and her attorney it showed the notation "all feed", that they relied upon that statement and that during the trial, witness again testified to that state of facts but that after the inspection of the photograph under order of the court, to defendant's surprise, he then testified that it showed the notation "all dairy feed." Appellant urges, "this was a mistake on the part of the witness, O. C. Reynolds, prejudicial to the rights of defendant and the court should have granted a new trial because of it."
This cause was tried to a jury. In determining whether plaintiff has made a submissible case for the jury, this court must consider the whole evidence whether offered by the plaintiff or the defendant, and plaintiff must be given the benefit of any and all facts and circumstances favorable to or tending to support plaintiff's theory of the case and every reasonable inference deducible therefrom, while evidence on the part of the defendant, which is contradictory to plaintiff's evidence or contradictory to any evidence favorable to plaintiff must be excluded. Wilhelm v. R. S. Buchanan Co., Mo.App., 131 S.W.2d 894. Kelley v. Absher, Mo.App., 210 S.W. 2d 531. Persten v. Chesney, Mo.App., 212 S.W.2d 469. Parrish v. Herron, Mo.App., 225 S.W.2d 391.
In view of this rule of law, there was sufficient evidence to submit to the jury the question whether defendant had an account with plaintiff, extending from July 18, 1947 to May 15, 1948. Plaintiff was operating a feed store. Defendant was one of his customers. She began buying feed from him in July, 1947, much of it was delivered to her at her home and stored in her barn, by plaintiff's truck driver in 1947, and by himself and another truck driver in 1948. She would come in and order it, sometimes alone, sometimes in company with her son, at other times he would be alone when it was ordered, but all the time it was delivered to her farm and put in her barn. Though her son was living with her on her farm during the entire time of this account, she owned the stock thereon. Plaintiff says that she told him to charge her with merchandise purchased by *339 her son. At the close of 1947, he had sold and delivered to her $671 worth of feed, during the same period she had paid him $190 for which he had given her credit. So at the end of 1947, she would still have owed him $481, which she says she paid in full with a $20 check. Though she testified in her defense she does not deny that with each purchase she received a carbon copy of the invoice but she does not produce any of them or offer any evidence that during 1947, there was charged to her, feed that she did not buy and receive. She does not contend that $20 was all that she owed plaintiff on December 30, 1947, but merely that he told her so. The very check that she claims to have paid her bill with bears evidence of fraud. She gave it to plaintiff, plaintiff deposited it in the bank at Ava and it was immediately photographed. The photograph shows that it was for "dairy feed", a distinct and separate account from the one sued upon. But when it was introduced in evidence, it had been changed so that in place of the word "dairy" was the word "all". This check, after it cleared from the banks, was at all times in her possession and she produced it at the trial. The original check is in the transcript before us and shows either an attempted erasure or the word "all" superimposed on other writing.
The records of plaintiff also show that in 1948 over a period from January 21 until May 11, six payments were made on her account and credit given her in the total sum of $218. There were two separate accounts, one for dairy feed, which was paid out of the milk checks, and the other for miscellaneous feed. The plaintiff testified that at one time, he remembered the defendant giving him a check which was marked "Paid in full" but it was for dairy feed.
With all these facts before it, we think the jury was clearly justified in finding for the plaintiff in the total amount that he claimed was due. It was a question of fact, which, as far as this court is concerned, was settled by the jury in favor of the plaintiff. See also Will Docter Meat Co. v. Hotel Kingsway, Mo.App., 232 S. W.2d 821.
At the close of the evidence, the parties agreed of record, that the court should charge the jury orally, in accordance with the procedure followed in the Federal courts. Thereupon the trial judge, with alacrity and in a manner that would do credit to any of our versatile brethren of the Federal bench, orally instructed the jury in a lucid, logical and juridical manner on all points of law involved. In fact, neither party objects to the law declared in the charge or to the manner of its delivery but appellant contends the court's submission of the question of agency was error, not because it stated an incorrect principle of law, but because there was no evidence upon which such an instruction could be based. From what we have heretofore said of the evidence, we think it was sufficient to submit the question of agency and that the court was correct in submitting that issue to the jury.
We agreed with the contention of the learned counsel for appellant (who, by the way, has only been counsel on appeal and did not participate in the trial) that an instruction should not be given which is not based on evidence in the case. This is unquestionably the law. But here there is evidence, as we think, sufficient to justify the jury in finding that in making these purchases, defendant's son was acting as her agent and, this being true, the court should have instructed the jury on that question.
Lastly, it is urged by the appellant that the testimony of her witness, Mr. Reynolds, the banker, was contrary to what she anticipated and therefore she was surprised and injured when he changed his testimony after refreshing his memory by again looking, and having the sheriff also look, at the photograph of the check. No doubt appellant and her counsel were surprised at the change in the witness's testimony after refreshing his memory. But the first information that there had been a photograph taken, came from the lips of the appellant when she invited counsel for plaintiff to go over to the bank and examine the picture. It was she that brought the banker as a witness *340 and it was she that first invited an inspection at the bank. It does not appear from the record that counsel for defendant had inspected the photograph at the bank. It does not appear that counsel for plaintiff knew that such a photograph was in existence. It was only when plaintiff's counsel, upon an inspection of the check presented by the defendant, suggested that erasures appeared on it, that the bank photograph was mentioned.
It is urged that defendant-appellant's witness, Reynolds, made a mistake in his testimony, that previous to the trial he had informed defendant and her attorney that the photograph of the check showed payment for "all feed"; that he also testified to that effect but after he and the sheriff had examined the photograph anew, he testified that it showed "all dairy feed", and that this was a mistake prejudicial to the defendant. It is argued here that this change in the testimony was a surprise to the defendant and prejudiced the jury against her defense. It is not stated definitely what the mistake of the witness was, whether he was mistaken in his testimony before he and the sheriff examined the photograph or whether his testimony after that examination was a mistake.
Appellant and her trial counsel knew there was a photograph taken of the check, after it had been deposited by plaintiff and they produced a witness to so testify. It would have been an easy matter for appellant or her counsel to have gone to the bank and viewed the photograph prior to the trial. If the mistake was in the testimony after the witness Reynolds and the sheriff had viewed the photograph, then it would have been easy to have suspended the trial until a further examination could have been made, to have brought the photograph to the court room, or, if that were impossible, to have taken the jury to the bank across the square and let them view it. This was not done, neither was there any objection to the testimony of the banker or the sheriff as to what the photograph showed. In fact, it is not insisted here that the photograph does not show the notations as testified to by the sheriff and the witness after the re-inspection. The fact that a party's own witness gives testimony differing from that which the party expected him to give, does not furnish adequate ground for granting a new trial on the ground of surprise, unless it appears that there was no want of diligence in guarding against such surprise. 30 Am. Juris. New Trial, Section 151, p. 158. 66 C.J.S., New Trial, § 96, p. 277. State v. Ashcraft, 342 Mo. 608. 116 S.W.2d 128. Buehler v. Baum, Mo.App., 71 S.W.2d 851.
If a person desires to take advantage of alleged surprise at the trial, he must object then and will not be permitted to sit mute and speculate on the verdict and when it is found against him, claim a new trial on the ground of surprise. State v. Biel, Mo.Sup., 169 S.W.2d 375. Pitzman Co. of Surveyors & Engineers v. Bixby & Smith, 338 Mo. 1078, 93 S.W.2d 920.
If anyone was surprised at the testimony relative to the photograph, it should have been the plaintiff. Defendant's answer merely amounted to a general denial and fell far short of the requirements under Section 39 of the Civil Code of Missouri, Sec. 847.39, Mo.R.S.A. The main part of the defense was payment which was not pleaded although it is an affirmative defense and must be pleaded before evidence of payment can be introduced, if objected to. Emory v. Emory, Mo.Sup., 53 S.W.2d 908. Haycraft v. Haycraft, Mo.App., 154 S.W.2d 617. Wilkerson v. Farnham, 82 Mo. 672. Edwards v. Giboney, 51 Mo. 129. Henderson v. Davis, 74 Mo.App. 1.
From what has been said, we must hold that a reversal is not justified on the ground of mistake or surprise.
Finding no reversible error in the record, the judgment of the trial court should be affirmed. It is so ordered.
BLAIR, J., concurs in results.
McDOWELL, J., concurs.