ANDREWS et al. v. RAIBER.

No. 28919.

St. Louis Court of Appeals. Missouri.

July 20, 1954.

J. Grant Frye, Cape Girardeau, for appellants.

Finch & Finch and Jack O. Knehans, Cape Girardeau, for respondent.

HOUSER, Commissioner.

This is an action for damages brought by Robert Andrews, Jr., his wife and minor child against Patricia Raiber. In Count I of the petition Robert Andrews, Jr., sued for property damage and in Counts II and III his wife and daughter, respectively, sought damages for personal injuries, all arising out of an automobile collision. Defendant's motion for a directed verdict at the close of plaintiffs' evidence was sustained by the trial court. Plaintiffs appeal from the judgment rendered on the directed verdict for defendant.

The petition alleged that Patricia Raiber, Marilyn Wilkening and Robert Andrews, Jr., were driving their respective automobiles west on Independence Street in Cape Girardeau, in that order; that defendant Patricia Raiber "suddenly stopped her automobile without * * * giving any warning whatsoever * * * in the middle of her lane at about 100 feet west of the intersection of West End Boulevard and Independence Street;" that Marilyn Wilkening also stopped her automobile suddenly and without warning, as a result of which plaintiffs' automobile was caused to collide with the Wilkening automobile.

Independence Street is an east and west street. West End Boulevard runs north and south. Both streets are very busy thoroughfares. At their intersection there is a four-way electrically operated stop and go sign.

Plaintiffs called defendant as their first witness. She testified to the following state of facts: Driving her automobile west on Independence, she approached the intersection in question. The light was green. She went through the intersection. Her car was the last to go through the green light. She proceeded slowly, looking at the street markers, not going fast. At a point about 150 feet west of the intersection she stopped the car to inquire about directions. Her car was equipped with stop lights which were in good condition. She came to a very slow stop. No cars were directly behind her when she stopped. She pulled to the side in a double parking position, although it was doubtful whether there was room to park a car between the right side of her automobile and the right curb. She rolled down her window and called to an attendant standing in the driveway of the adjacent service station. He paid no attention to her. She called again. Apparently not having been heard above the noise of the traffic, she "hollered" a third time. Not yet having attracted his attention defendant turned to her sister and made a remark. After the remark, defendant heard the crash of the collision between the Andrews and Wilkening automobiles. Defendant's automobile was not hit. "About a minute and a half" elapsed from the time defendant stopped until she heard the crash. Defendant's automobile was 8–10 feet in front of the Wilkening automobile at the time of the crash.

According to appellants there were two or three cars traveling westwardly ahead of them. Robert Andrews, Jr., testified that the Wilkening car was immediately ahead of his car and defendant's car was immediately ahead of the Wilkening car. According to Andrews the stop light had just changed to green as he came up to the intersection and the cars were moving out on the green light. He followed the preceding cars through the intersection, all three continuing west on Independence. As the Raiber and Wilkening cars moved out from the intersection they were about the same distance apart as the Wilkening and Andrews cars. Andrews was going 8–10 miles per hour through the intersection. The cars were going probably 10–12 miles per hour when Andrews saw the Wilkening car stop. Andrews stated that about the time the rear of his car went through the cross street the car in front of him stopped so quickly that he did not have time to stop. He immediately put on his brakes, after a reaction distance of about half a car length. His car was going possibly 2–3 miles per hour at the time of the collision, which occurred just about 20 feet clear of the westerly line of West End Boulevard and In-

dependence. He said that two or three cars ahead of him stopped; that the Raiber car stopped without giving any signal of any kind of intention to stop in the middle of the street; that he did not apply his brakes then, but "stopped momentarily, and following along with them, and then put my brakes on and the Wilkening car stopped quick, and both of them, and I wasn't a car length behind them. * * * I put my brakes on and everything but I couldn't get by it without hitting * * * the back of the Wilkening car." The Wilkening car stopped just as the rear of his car cleared the intersection. At that time Andrews was about the length of his automobile or approximately 20 feet behind the Wilkening car. When Andrews saw the Wilkening car stopped in front of him the rear of Andrews' car was still in the intersection. Although Andrews testified on direct examination that the Raiber car stopped without giving any signal, he testified on seven separate occasions on cross-examination that he did not see the Raiber car stop.

Mrs. Andrews testified that "these cars ahead" of her stopped without giving any warning; that the Andrews car was about a car length behind the Wilkening car just before the collision and that there was about the same distance between the Wilkening and the Raiber car, "judging the way the traffic was." On cross-examination she testified that she did not see the Raiber car stop. She "saw it stopped but not stopping." She did not know the rate of speed the Raiber car was traveling. The Andrews car was going very slow— practically stopped—when it hit the Wilkening car. The Andrews car was just barely clear of the intersection when it ran into the Wilkening car.

The only question on this appeal is whether there was any substantial evidence to support the assignment of negligence that defendant stopped her car suddenly and without warning.

A review of the record clearly indicates that the trial court correctly sustained defendant's motion for a directed verdict, because there was no substantial evidence to support the single charge of negligence

that defendant suddenly and without warning stopped the automobile she was driving. True enough, Robert Andrews, Jr., testified on direct examination that the two cars ahead of him (of which defendant's automobile was one) stopped—that the Raiber car stopped—and that the Raiber car did not give any signal of intention to stop. Further, Mrs. Andrews testified that the cars ahead of her stopped and that they gave no "warning about stopping." From the whole testimony of both these parties, however, as it was fully developed on cross-examination, it is quite clear that their testimony that the Raiber car stopped and that it stopped suddenly and without warning cannot be counted on the question whether a submissible case was made for the reason that they conclusively established by their own testimony that neither of them was testifying to facts within his own personal knowledge but that each of them was stating mere conclusions. Robert Andrews, Jr., in seven separate and distinct instances on cross-examination, admitted that he did not see defendant's car stop. The record follows:

"Q. Did you see the Raiber car stop up in front? A. Well, no, I didn't.

"Q. You didn't? A. No.

* * * * * *

"Q. You didn't see the Raiber car stop, is that correct? A. I didn't see it stop.

"Q. You didn't? A. I didn't see it stop right then, no.

* * * * * *

"Q. I will ask you, if you know, of your own knowledge, from what you saw, did you see the Raiber car stop? A. No, sir, I wasn't watching the Raiber car directly, but the car in front of me, naturally.

"Q. You didn't see the Raiber car stop and you don't know whether of your own knowledge, if it stopped before or after the Wilkening car? A. Bound to have stopped before.

"Q. You didn't see it? A. I didn't see it stop right then, no, the minute it

stopped, but I saw Mrs. Wilkening stop and I tried to stop, that is what I mean.

"Q. But you didn't see the Raiber car when it stopped? A. No, sir."

Furthermore, Andrews' conclusion that the Raiber car stopped before the Wilkening car stopped was based upon a hearsay statement. When asked how he knew the Raiber car had stopped first, Andrews answered "Mrs. Landgraf said it did." This answer was stricken by the court upon objection.

It is likewise clear that Mrs. Andrews' statement was nothing but a conclusion. She knew the Raiber car was stopped *after* the collision, but she did not see it stop. Quoting from the record:

"Q. Do you know whether the Raiber car stopped or not? A. I know it was stopped.

"Q. It was stopped after the collision? A. It was stopped when I saw it.

"Q. It was stopped when you saw it, did you see it stop? A. No.

"Q. You didn't see the Raiber car stop? A. No. I saw it stopped but not stopping.

"Q. It stopped but you didn't see it stop, is that your answer? A. That's right.

"Q. You didn't see Mrs. Raiber stop her car in that street, did you? A. No.

\* \* \* \* \* \*

"Q. You see it (referring to the Raiber car) stop? A. No.

"Q. All you saw was the Raiber car proceeding west on Independence? A. Yes.

"Q. You don't know how fast Mrs. Raiber was driving, do you? A. No, sir."

Nor did plaintiffs state the distance separating the Raiber and Wilkening cars at the time the two cars stopped, or give testimony from which the prior stopping of the Raiber car might be inferred. Andrews did testify that when they stopped the cars were close together—that they "could have been bumper to bumper"—but frankly conceded that he "couldn't say" and "didn't know," and concluded by saying that when he got out of his car Mrs. Raiber had moved her car.

This evidence is not substantial evidence that defendant suddenly and without warning stopped the automobile which she was driving. At best it constituted a conclusion to that effect. A submissible case depends upon the proof of facts and cannot be sustained by a showing of mere conclusions.

Thus at the close of plaintiffs' case there was a failure of proof of the only assignment of negligence. Having failed in this respect, plaintiffs were confronted with the testimony of defendant (who was their own witness) that she came to a very slow stop a considerable time before the occurrence of the collision, and that there were no cars directly behind her when she stopped. Plaintiffs were bound by this evidence, since defendant's testimony in this respect was not contradicted by plaintiffs or by any witness for plaintiffs. Sigmund v. Lowes, Mo.App., 236 S.W.2d 14. Plaintiffs having failed to prove the negligence charged and having affirmatively shown facts from which non-liability on the part of defendant might be inferred, the action of the trial court was correct and the Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the Circuit Court of Cape Girardeau County is, accordingly, affirmed.

RUDDY, Acting Presiding Judge, BENNICK, J., and LAWRENCE HOLMAN, Special Judge, concur.