Esta Jane ZEIGENBEIN, a minor, by and through her natural father and next friend, Edward Zeigenbein, et al., Plaintiffs-Appellants,

v.

Mary THORNSBERRY, Defendant-Respondent.

No. 51486.

Supreme Court of Missouri, Division No. 1.

April 11, 1966.

Cohn & Lentz, by Arthur B. Cohn, Waynesville, for plaintiffs-appellants.

Allen, Woolsey & Fisher, Harold J. Fisher, Robert C. Fields, Russell G. Clark, Springfield, for defendant-respondent.

DONNELLY, Judge.

This is an action for damages resulting from a vehicular collision in Pulaski County, Missouri, which occurred February 5, 1963. Esta Jane Zeigenbein, a minor, by her next friend, sued in Count I of the Petition for $50,000. Her parents, Mr. and Mrs. Edward Zeigenbein, sued in Count II of the Petition for $25,000. The trial court, at the close of plaintiffs' evidence, sustained defendant's motion for directed verdict. Plaintiffs have perfected an appeal to this Court.

The principal question on this appeal is whether the trial court erred in sustaining the motion for directed verdict on the ground that plaintiffs failed to make a submissible case against defendant. In determining whether or not a submissible case was made for the jury, we must consider the evidence from a viewpoint most favorable to plaintiffs and give plaintiffs "the benefit of every reasonable favorable inference which the evidence tends to support." Berry v. Harmon, Mo.Sup., 329 S.W.2d 784, 789.

The parties agree a collision occurred between a vehicle operated by Lloyd Poulson and a vehicle operated by defendant, Mary Thornsberry, at a point on AA Highway in Pulaski County, near Crocker, Missouri. Esta Jane Zeigenbein was riding in the Poulson car as a passenger in the right front seat. Her sister, Georgia Sharp, was riding in the Poulson car as a passenger in the right rear seat. The collision occurred at about ten o'clock at night. The weather was clear and the highway dry. The highway was blacktop, eighteen feet wide, with shoulders three feet in width. Traveling east at the scene of the collision, there was a slight rise in the highway and a slight curve to the left. The Poulson vehicle was traveling east. The Thornsberry vehicle was traveling west.

Plaintiffs plead and contend here that defendant was negligent in driving her vehicle into the south half of the highway into collision with the Poulson vehicle. We will review the evidence and determine whether it is sufficient to make a submissible case.

■ We first consider whether the circumstantial evidence of physical facts is sufficient to make a submissible case. Each vehicle was damaged on its left front. After the collision, debris and dirt covered the highway from shoulder to shoulder and extended fifteen feet east and west. Most of it was in the center of the highway. A wheel was found in the north half of the highway near the center. Tire tracks or marks left by metal were located on both the north and south edges of the highway. Tracks from the Thornsberry automobile showed that after the collision it went into a ditch along the north side of the highway, came out of the ditch, crossed the highway, and came to rest west of the debris and on the south side of the highway. The Poulson car came to rest on the south side of the highway and east of the debris. We are of the opinion that this evidence does not "exclude guesswork, conjecture, and speculation as to the existence of the necessary facts." Schoen v. Plaza Express Co., Mo. Sup., 206 S.W.2d 536, 538. The physical facts do not "with compelling force indicate just where on the highway this collision occurred," Berry v. Harmon, Mo.Sup., 323 S.W.2d 691, 696, and are not sufficient to make a submissible case of negligence.

■ We next consider whether the testimony of plaintiff Esta Jane Zeigenbein is sufficient to make a submissible case. Esta Jane testified on direct examination that just before the accident occurred she saw lights coming and that these lights were located "about the middle of the road." On cross-examination, she testified that when she saw the lights, she "never saw the road" and was "not able to place those lights as being on any particular point or place in the roadway before the accident

happened." Obviously, what she said on direct examination was shown on cross-examination to be a mere guess on her part and of no probative value, and is not sufficient to make a submissible case of negligence. Van Bibber v. Swift, 286 Mo. 317, 228 S.W. 69, 76.

Plaintiffs' case must stand or fall on the testimony of Georgia Sharp. Georgia testified on direct examination in part as follows:

"Q Now, just before the collision occurred, can you tell us if you noticed anything coming towards you on the highway?

"A Yes, sir.

"Q At that particular time can you tell us where you were located in the car?

"A I was on the right-hand side in the back seat.

"Q And where were you looking?

"A Straight ahead.

"Q And you were looking out of what portion of the automobile which you were in? A The right.

"Q And were you looking out the front or the side?

"A The front.

"Q Could you see out the front windshield of the automobile in which you were in?

"A Yes."

*    *    *    *    *    *

"Q And tell us what you saw as you looked out the front windshield of the automobile just before the collision?

"A I saw a car coming down the road.

"Q And where—where did you—what did you notice about this car?

"A That it was in our lane.

"Q And how could you tell that?

"A Because I just knew it.

"Q  Did you see the lights on this car as it was approaching you?  A  Yes.

"Q  Do you know whether or not the lights were on dim or on bright?  A  Yes.

"Q  What were they on?  A  Bright.

\*    \*    \*    \*    \*    \*

"Q  Can you tell us how long a period of time after you first saw these lights that the collision occurred?

"A  It's just a few seconds.

"Q  And what did you do, if anything, after you saw the lights approaching on your side of the road?

"A  I ducked down.

"Q  And did you see the actual cars hit?  A  No."

Georgia testified on cross-examination in part as follows:

"Q  \*  \*  \*  Now, in connection with what you observed as you were driving along there and riding in this automobile, isn't it a fact that sometime during this period immediately before the accident, or when the accident happened, that you were reaching down in your purse to get cigarettes?  A  I'd started to get a cigarette.

"Q  And when you reached down to get those cigarettes that's when the accident happened, did it not?  A  Yes.

"Q  So when you told Mr. Cohn about ducking down, that's—I mean, you meant you turned your head down to see your purse and get your cigarettes out of it; is that correct?  A  Yes.

"Q  Now,—and actually, then, when the accident happened; that is, when these two cars came together, you were not looking ahead out the windshield, were you?

"A  Not when we hit.

"Q  That's correct.  You had—before you looked down were reaching in your purse for a cigarette, you had been looking out the windshield in the front of the car before that time; is that correct?

"A  Yes.

"Q  Now, isn't it also a fact that after then you saw these lights of a car coming toward you?  Now, that—that's before you reached down for the cigarettes; is that correct?  Do I understand you?  A  Yes.

"Q  And at that time I believe you told Mr. Cohn it seemed to you the lights were on bright; is that correct?  A  Yes.

"Q  And then you reached down for your cigarettes and had your head down and the accident happened; is that correct?  A  Yes.

"Q  Is it not true, and have you not previously stated that when you looked down to get your cigarettes that you did not know and there was nothing that made you think that there was going to be an accident was there?  A  She was on our side of the road.

"Q  Well, when you reached down to get your cigarettes, have not you previously stated that there was nothing that made you think there was doing to be an accident?  A  I don't know.

"Q  Well, when you saw these lights coming and you reached down to get a cigarette, you didn't think there was going to be an accident or you wouldn't have been reaching for a cigarette at that time, would you?  A  I didn't have time to think.

"Q  Well, you had time to take your eyes off the road and look down and think about getting a cigarette, didn't you?

"A  I had started to get a cigarette and I saw the lights.

"Q  And you then just went on about continuing what you had started to do, that was getting your cigarette; is that correct?

"A  Ducking down.

"Q  Well, you looked down to get your cigarette?  A  Yes."

"Q  That's what you were doing when the accident happened, isn't it?  Is that correct?

"A I started to get a cigarette.

"Q As I understand, you'd started to get this cigarette before you saw these lights coming toward you?

"A As I started to get the cigarette I looked and I saw the car coming.

"Q And then you just continued even after seeing those lights, you continued on doing what you had started to do; that is, looked down in your purse and reaching in your purse to get a cigarette; is that correct?

"A I didn't reach in my purse. I started to get a cigarette but I didn't have time.

"Q But you were looking down at your purse with the intent of getting the cigarette; is that correct? A Yes.

"Q And that's what you had started to do before you saw the lights, isn't it? A Yes.

"Q And that's what you were still doing when the accident happened, is it not?

"A I don't know—it happened so fast.

"Q Is—is that the fact, that actually it happened so fast that you don't know what happened?

"A I know what happened. I looked, I saw the lights and we were on our side of the road, and then I just ducked down and it just happened—it was a very few seconds when I—after I saw the lights.

"Q But when you saw these lights coming and when you looked down to get your cigarettes, you did not think that there was going to be an accident, did you?

"A I didn't have time to think anything.

"Q Well, then, you had no thoughts that there was going to be an accident then; is that correct?"

    *    *    *    *    *    *

"THE WITNESS: Yes."

The duty to make their case is upon plaintiffs and they "must remove it from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence." Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, 787; Probst v. Seyer, Mo. Sup., 353 S.W.2d 798.

■ "Substantial evidence is that evidence which, if true, 'has probative force upon the issues * * *,' and from which the trier of fact can reasonably decide the case on the fact issues. Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, cited by petitioner." Cupples-Hesse Corporation v. State Tax Commission, Mo.Sup., 329 S.W.2d 696, 702.

■ Georgia Sharp testified that *just before the collision* defendant's vehicle was coming down the road "in our lane." She stated that after she *first* saw the lights "just a few seconds" elapsed before the collision occurred. She testified on cross-examination that she "didn't have time to think anything." Defendant contends the evidence elicited from Georgia Sharp is insubstantial because she stated "a few seconds" elapsed after she first saw the lights and before the collision occurred. It is true that evidence of one's prior negligence if unconnected with her alleged negligence at collision may be too remote to tend to prove causal negligence at the time of the collision. Shepard v. Harris, Mo.Sup., 329 S. W.2d 1. However, in view of all the evidence, her testimony was substantial evidence showing that defendant's vehicle was on the wrong side of the highway when the collision occurred. Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353, 357. Defendant contends that Georgia's testimony that defendant's vehicle was in the wrong lane was rendered a conclusion and not a fact when Georgia said, "because I just knew it." It is true that a case, to be submissible to a jury, depends upon proof of facts and cannot be sustained by mere conclusions of witnesses. Van Bibber v. Swift, supra; Andrews v. Raiber, Mo.App., 270 S.W.2d 529. Also, a witness may qualify her testimony in such a way as to render it of no

probative value. Van Bibber v. Swift, supra; Oglesby v. Missouri Pac. R. Co., 177 Mo. 272, 296, 76 S.W. 623, 627, 628. In our opinion, when Georgia said, "because I just knew it," she did not render her prior testimony a conclusion. This evidence and the cross-examination inferring that Georgia did not "duck down" but was in fact reaching for a cigarette may have weakened plaintiffs' case. However, it affected only the credibility of plaintiffs' evidence and the weight to be given by a jury. It remained substantial evidence of probative value. Anderson v. Bell, Mo.Sup., 303 S.W.2d 93, 96; Huffman v. Mercer, Mo.Sup., 295 S.W.2d 27, 32; Higgins v. Terminal R. R. Ass'n of St. Louis, 362 Mo. 264, 274, 241 S.W.2d 380, 384; Swain v. Anders, et al., 349 Mo. 963, 970, 163 S.W.2d 1045, 1049, 1050.

■ We know that "to make a submissible case there must be substantial evidence not only of negligence, but substantial evidence that such negligence directly caused or contributed to directly cause plaintiff's injuries; and that the usual test as to causal connection is whether the facts show that absent the negligent act, the injuries would not have been sustained." Wood v. St. Louis Public Service Co., 362 Mo. 1103, 1109, 246 S.W.2d 807, 811. Defendant cites King v. Ellis, Mo.Sup., 359 S.W.2d 685; O'Neill v. Claypool, Mo.Sup., 341 S.W.2d 129; Sanders v. Henderson, Mo.Sup., 301 S.W.2d 748; Probst v. Seyer, supra; Andrews v. Raiber, supra; Williams v. Cavender, Mo.Sup., 378 S.W.2d 537; and Mount Olivet Baptist Church v. George, Mo.Sup., 378 S.W.2d 549. These cases are distinguishable on the facts and do not assist us here. As defendant suggests, in all probability no case has been decided in Missouri with facts identical to those in the instant case. Ordinarily, however, proof of the driving of a car onto the wrong side of the highway and into collision makes a submissible case of negligence. Evans v. Colombo, Mo.Sup., 319 S.W.2d 549, 551.

■ We are of the opinion that the testimony of Georgia Sharp made a submissible case for the jury, based upon facts and not conclusions, and that its probative value was not destroyed on cross-examination. Viewing her testimony from the standpoint most favorable to plaintiffs, the jury could reasonably have found that defendant drove her vehicle onto the wrong side of the highway into collision and that absent such negligence the collision would not have occurred. We hold a submissible case was made for the jury.

Accordingly, the case is reversed and remanded.

All concur.