**Arnold MADISON, Plaintiff-Appellant,**

**v.**

**Dixie DODSON, Defendant-Respondent.**

**No. 8599.**

Springfield Court of Appeals.

Missouri.

Jan. 17, 1967.

Motion for Rehearing or to Transfer Denied Feb. 13, 1967.

Application to Transfer Denied April 10, 1967.

John Alpers, Jr., Cabool, for plaintiff-appellant.

Hiett & Becker, Houston, for defendant-respondent.

TITUS, Judge.

This action, filed June 25, 1965, in the Circuit Court of Texas County, Missouri, is the second suit brought by plaintiff, Arnold Madison, on a $9,500 promissory note admittedly executed at Salinas, California, on June 20, 1961, by Doyle and Dixie Dodson (husband and wife). The note, due December 1, 1961, obligated the makers jointly and severally and represented money loaned by plaintiff so Mr. Dodson (who died in August 1964) could buy a half-interest in the Hogan Department Store at Salinas which he and plaintiff thereafter, for a time at least, operated as a partnership. Plaintiff asserts only $500 principal had been paid on the note before either suit was instituted and here appeals from a judgment entered May 13, 1966, on a verdict returned in favor of defendant.

Labeled "Retirement of Partner," an agreement signed by plaintiff and Doyle Dodson January 3, 1962, provided plaintiff was retiring from the partnership effective January 13, 1962, and was to be paid $19,-000 for his interest in the business. Handwritten at the end of the contract and above the signature appears: "This agreement becomes effective the day of transfer of the nineteen thousand and no/100 to me." Plaintiff testified that after execution of the agreement he had nothing to do with the store management, but worked "for a period under a salary." The store was closed in February or March 1962 and its assets sold for the benefit of creditors.

Plaintiff first filed suit on the note February 21, 1962, in the Superior Court of Monterey County, California, against "Doyle Dodson, Dixie Dodson, Doe One, Doe Two and Doe Three, Defendants." Mr. and Mrs. Dodson were personally served and the sheriff's return recites Mr. Dodson was being sued both "individually and doing business as Hogans Department Store, a sole proprietorship." On September 13, 1962, a "Default Judgment (By Court)" was entered by the California Court against "defendant Doyle Dodson [in] the sum of $9,000, plus interest thereon at the rate of 6½% per annum from and after June 20, 1961; for attorneys' fees in the sum of $2,500; together with costs in

the sum of $791.08." The record is totally void of evidence as to what disposition, if any, was made of the claim against Dixie Dodson in the California law suit.

To avoid liability defendant pleaded the note had been fully paid by Doyle Dodson and that the California judgment against him "is a bar to this action against this Defendant; that said Judgment is res adjudicata to this cause of action against this Defendant and that this Defendant was discharged and released from all liability on said Note." Attached to and incorporated in defendant's answer was a copy of the "Retirement of Partner" agreement and an authenticated copy of the California court records. Plaintiff's reply denied the affirmative defenses of the answer.

The equivocalness in defendant's testimony is best illustrated per ipsissima verba: "Q. Now, the consideration in this [Retirement of Partner] agreement is nineteen thousand dollars, is that correct? A. Yes * * * Q. Did you and your husband acquire the money to pay this nineteen thousand dollars? A. Yes, we did. * * We borrowed it from the Bank of America [and] it was turned over to my husband to pay Mr. Madison. * * * Q. Mrs. Dodson, I will ask you: Was this note paid? A. Yes. * * * Q. * * * [H]ow was it paid? A. It was paid with this agreement and the twenty thousand we borrowed from the Bank of America. * * Q. You didn't pay him. And if he was paid he would have been paid by someone else, right? A. Yes. * * * Q. How much money did Mr. Madison [say he] receive[d] from your husband, according to the conversation that you overheard? A. He said he received ten thousand dollars. Q. Now, did you ever hear Mr. Madison state that he received the other nine thousand dollars, the payment of this note? A. No, I understood this ten thousand dollars paid the note."

Four checks, totaling $9,000 drawn on the account of Hogan's Department Store at the Salinas Branch of the Bank of America, and each payable to plaintiff, were received in evidence. Plaintiff testified the checks were given him the latter part of January 1962 "postdated" in an attempt to pay the note balance. None of the checks were paid because of "Not Sufficient Funds." Two of the checks are dated February 7, 1962, signed by Dixie Dodson, and are in the amount of $2,000 each. Written on the face of both these checks is: "Note Amer Trust Bank." Defendant says these checks were given plaintiff because of a note he and her husband had at the American Trust Bank for borrowing "some money to buy some property, I believe it was * * * it has nothing to do with this other note." Mrs. Dodson did not testify regarding the third check dated February 20, 1962, in the amount of $2,500, nor as to the fourth check drawn to a like amount dated February 27, 1962.

Instruction number 5 (not in MAI) offered by the defendant was given by the trial court, as follows:

"Your verdict must be for defendant if you believe:

"First, that the promissory note sued on has been paid in full by Doyle Dodson or Dixie Dodson, or both, or

"Second, that plaintiff sued Dixie Dodson as a defendant, along with Doyle Dodson, in the Superior Court of the State of Califonia, Monterey County, for payment of the note in question in this case, and

"Third, that no court judgment was rendered against Dixie Dodson in said California Court, nor was said case dismissed against Dixie Dodson, who was and is the same person as the defendant in this case."

The trial court of its own initiative gave instruction number 6 (MAI No. 3.01) as follows·

"In these instructions you are told that your verdict depends on whether or not you believe certain propositions submitted to you. In determining whether or not you believe any proposition, you must consider only the evidence and the rea-

sonable inferences derived from the evidence. The burden is upon plaintiff to cause you to believe the propositions necessary to support his claim against defendant. If the evidence in the case does not cause you to believe a particular proposition submitted or if you are unable to form a belief as to any such proposition, then you cannot return a verdict requiring belief of that proposition."

On this appeal plaintiff claims the trial court erred by giving instruction number 6 without including in the charge that defendant had the burden of proving her affirmative defenses. Plaintiff objects to instruction number 5 because the affirmative defense of payment and "the second affirmative defense contained in said instruction [were] not supported by the evidence and because the instruction does not properly define the affirmative defense of res adjudicata."

■ Payment is an affirmative defense [1] and the burden of proof was on defendant to establish payment of the note.[2] Proof of payment may come from inferences drawn from facts and circumstances, yet "to authorize such an inference the facts and circumstances should 'all point one way (to payment) and be inconsistent with any other reasonable hypothesis than that payment was made.' " Dorroh v. Wall, Mo. App., 297 S.W. 705(2); Wolfberg v. State Mut. Life Assur. Co. (8CCA), 36 F.2d 171, 174(2).

The recitation by defendant the note was paid "with this [Retirement of Partner] agreement and the twenty thousand [dollars] we borrowed from the Bank of America," suggests an amalgamation of the note with the contract into a resulting $19,000 alloy. Plaintiff conceded during oral argument before us the $19,000 figure

stated in the agreement did, in fact, include the $9,000 balance due on the note, even though the contract itself does not so provide. Regardless of this most unusual blending, the parties consider the note and agreement as separable entities, which results in placing a $10,000 valuation on plaintiff's interest in the partnership. Defendant's was the only testimony offered to prove payment, and her alludement to the borrowed $20,000 implied, at least, the entire $19,000 obligation (which included the note) had been satisfied. Pressed further, however, defendant revealed she had no personal knowledge of payment and was basing her testimony entirely on what plaintiff had told her. Plaintiff, according to defendant, did not tell her "the other nine thousand dollars, the payment of the note" had been made, and the $10,000 plaintiff allegedly admitted being paid was merely "understood" by defendant to have paid the note.

■ Except for what defendant said she "understood," there was no evidence concerning application of the $10,000 payment. Generally, if a debtor, owing the same creditor two or more obligations, fails to specify the account to which a payment is to be applied, the creditor may make the application. Herrman v. Daffin, Mo.App., 302 S.W.2d 313, 315(1); St. Paul Fire & Marine Ins. Co. v. United States (8CCA), 309 F.2d 22, 24, and authorities there cited. A reasonable hypothesis possible from the evidence is that plaintiff applied the $10,000 to pay his $10,000 interest in the partnership. This assumption is augmented by plaintiff's relinquishment of all management in the partnership, the fact that after the contract was signed and he allegedly was paid $10,000, he worked as an employee in the store, and in February 1962 filed suit on the note in California against

1. V.A.M.R. 55.10; V.A.M.S. § 509.090; Bonnot v. Tackitt, Mo.App., 265 S.W.2d 748, 752-753(7); Silvey v. Herndon, Mo. App., 234 S.W.2d 335, 340(7).

2. Machctinger v. Grenzebach, Mo.App., 282 S.W.2d 200, 202(4); Allmon v. Allmon, Mo.App., 306 S.W.2d 651, 655(3); Hubbard v. Happel's Estate, Mo.App., 382 S.W.2d 416, 424(5); 70 C.J.S. Payment § 93, pp. 298-300.

defendant and Doyle Dodson, the latter then being described as the sole proprietor of Hogan's Department Store. In any event, it cannot be said the mere fact $10,000 was paid to plaintiff points only towards payment of the note and is inconsistent with any other reasonable hypothesis. Since defendant's testimony tends to both prove and disprove payment of the note, no case was made on payment.[3] Also, examining the contexture of defendant's testimony resolves her assertion the note had been paid into a presumptuous pronouncement amounting to nothing more than a conclusion. A submissible case is dependent upon proof of facts. Mere conclusions do not satisfy that standard, and a witness can so dilute and qualify a positive assertion with other testimony as to render it of no probative value.[4]

 "The practice of submitting dual or multiple theories of recovery or defense in the conjunctive is prohibited." MAI No. 1.02, Excluded Areas. The Committee's Comment on this is "that the jury should not be instructed on a theory of recovery or defense not supported by the evidence and that any such submission, whether in the conjunctive or disjunctive, should be reversible error. A theory of recovery or defense should not be submitted unless it can stand alone." Missouri Approved Jury Instructions, p. 7. This is the same rule previously and often applied to disjunctive or alternative submissions. Ashton v. Buchholz, 359 Mo. 296, 221 S.W.2d 496, 502(10); Beckwith v. Standard Oil Co., Mo., 281 S.W.2d 852, 856–857(8); 88 C.J.S. Trial § 327c, pp. 855–856. Instruction number

5 herein is further erroneous because it allowed the jury to find the note had "been paid in full by Doyle Dodson *or* Dixie Dodson *or* both." There was no evidence whatsoever Dixie Dodson had paid the note or any part thereof. Her testimony specifically refutes such a theory.

 We are not required to be a nomenclator of the various defenses suggested in defendant's answer, and are concerned only with plaintiff's objections to the instruction. Defendant's complaint instruction number 5 does not properly define the affirmative defense of res judicata has merit. Broadly speaking, res judicata refers to a matter previously litigated between the parties and settled by a final judgment.[5] Instruction number 5 specifically negates any California judgment on the claim against defendant and makes no reference to the judgment rendered against Doyle Dodson. There is nothing in the record, as previously stated, to indicate what, if anything, occurred as to the claim against defendant in the California action. Consequently, there was no evidence upon which the jury could base a finding that suit had not been "dismissed against Dixie Dodson." "There is no presumption of law that a suit once begun is still pending until the contrary appears, and the fact must be affirmatively shown." 1 Am.Jur.2d Abatement, Survival, and Revival § 39, pp. 77–78, § 38, p. 77; Phelps v. Winona & St. P. Ry. Co., 37 Minn. 485, 35 N.W. 273, 276.

 It occurs to us paragraphs Second and Third of instruction number 5

3. Adelsberger v. Sheehy, 332 Mo. 954, 961, 59 S.W.2d 644, 647(6, 7); Stephens v. Thompson, Mo., 293 S.W.2d 392, 394(1, 2); Corder v. Pruitt, Mo., 361 S.W.2d 659, 661.

4. Zeigenbein v. Thornsberry, Mo., 401 S.W.2d 389, 393–394(5, 6); Andrews v. Raiber, Mo.App., 270 S.W.2d 529, 532(2); Van Bibber v. Swift & Co., 286 Mo. 317,

228 S.W. 69, 76(9); Oglesby v. Missouri Pacific Ry. Co., 177 Mo. 272, 296, 76 S.W. 623, 627–628.

5. Ratermann v. Ratermann Realty & Investment Co., Mo.App., 341 S.W.2d 281, 290–291(7, 9); Smith v. Smith, Mo.App., 299 S.W.2d 32, 35(5); 50 C.J.S. Judgments § 620, pp. 43–47; 77 C.J.S., pp. 274–275.

smack of a plea in abatement or an attempt by instruction to apply the doctrine of "another action pending." Such a plea seeks a judgment pro hac vice and, if sustained, merely tends to interrupt or suspend the action without going to the merits of the cause. 1 C.J.S. Abatement and Revival §§ 1 and 2, pp. 27–30. It is not a proper subject to submit to a jury for determination of the relative substantive rights or liabilities of the parties. 1 C.J. Abatement and Revival § 166, p. 107. "That there is another action pending between the same parties for the same cause *in this state*" (V.A.M.R. 55.31 [a] [8]; V.A.M.S. § 509.290–1 [8]) may sustain a plea in abatement, but it does not necessarily follow the plea will succeed where the prior action is pending in a court of a different state. Cutten v. Latshaw, Mo.App., 344 S.W.2d 257, 259(2, 3); Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626, 627–628(2); 1 C.J.S. Abatement and Revival § 63, p. 97.

When this appeal was argued, counsel for both parties acknowledged awareness of Hartley v. Oitdman, 410 S.W.2d 537, decided November 15, 1966, by the St. Louis Court of Appeals. That opinion emphasizes V.A.M.R. 70.02 relieved plaintiff of making a trial objection to instruction number 6 when his objections to same were made specific in his motion for new trial. As the parties are cognizant of what was said in Hartley, supra, concerning the trial court's failure to alter its burden of proof instruction (MAI No. 3.01) to charge that defendant had the burden of proving all affirmative defenses, we express confidence the same error of which plaintiff here complains will not be repeated in a retrial of this matter.

For the reasons aforesaid, the judgment is reversed and the cause is remanded for a new trial.

STONE, P. J., and HOGAN, J., concur.