Gloria J. (Krewson) ARNOLD,
Plaintiff–Appellant,

v.

Billie Bob KREWSON, Defendant–
Respondent.

Gloria J. (Krewson) ARNOLD,
Plaintiff–Respondent,

v.

Billie Bob KREWSON, Defendant–
Appellant.

Nos. 17426, 17427.

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 1992.

Brad D. Eidson, Houston, for Gloria J. (Krewson) Arnold.

John Alpers, Jr., Cabool, for Billie Bob Krewson.

MONTGOMERY, Judge.

Gloria J. (Krewson) Arnold (Gloria) and Billie Bob Krewson (Billie Bob) were granted a Decree of Dissolution of Marriage on July 8, 1986. By that decree Gloria was awarded custody of three minor children, and Billie Bob was ordered to pay child support of $31.67 per week per child for a total of $95 weekly. Gloria was also awarded one-half of Billie Bob's military retirement pension.

On August 29, 1990, Gloria filed a request for execution directed toward real estate owned by Billie Bob. Thereafter, he filed a Motion for Stay or Quashing of Execution. After hearing on November 6, 1990, the court stayed the execution until "further order of [the] court."

Gloria filed a second request for execution on December 10, 1990, similar in nature to the first. The amount alleged due under the July 8, 1986, decree was $6,071.38 principal, $1,638.99 interest, and child support of $7,758.56. Again, Billie Bob filed a Motion to Quash Levy and a Motion for Stay or Quashing of Execution. He alleged all amounts due under the decree had been paid.

The trial court heard the motion to quash the second execution and entered judgment quashing the execution as to the sum of $6,071.38 principal and $1,638.91 [1] interest. Execution and levy for the remaining amount of $7,758.56 due as child support was not quashed or stayed. From this judgment both parties appeal. We have consolidated the appeals.

Gloria's sole point claims the trial court erred in finding she received the benefits of one-half of Billie Bob's pension because he alleged payment as his defense, not receipt of benefits through payment of a loan and deposits to a joint checking account. Billie

Bob first complains of the failure of the trial court to quash the execution of the unpaid child support by refusing to apply the equitable principle of acquiescence in enforcing the parties' agreement to terminate the child support obligation. His last point bears only brief mention later.

The evidence reveals that after their dissolution of marriage the parties reunited in the family home in August 1986. That arrangement continued until December 1986 when they permanently separated. On November 12, 1986, the parties borrowed sufficient funds from the Peoples Savings Bank, Licking, Missouri, to allow Gloria to buy a 1982 Dodge van. The note was signed by both parties, but Gloria took title to the van in her name alone. Defendant's Exhibit N reflects Gloria wrote a check dated November 17, 1986, on the parties' joint checking account at the Peoples Savings Bank for $6,400 in payment of the van. She later traded the van in on another vehicle. The note was paid monthly by funds from Billie Bob's military retirement check. The monthly payment of $344.67 slightly exceeded one-half of the military pension to which Gloria was entitled under the decree of July 8, 1986. This arrangement continued until January 1988 when Gloria began directly receiving her half of the pension. Billie Bob eventually paid the note in full.

Gloria was awarded a 1980 Ford by the Decree of Dissolution of Marriage, subject to a $1,200 debt. She testified Billie Bob paid that debt from pension funds and agreed in her brief the trial court correctly credited Billie Bob the sum of $1,200 towards her share of the retirement payments due her.

The decree further provided that the family home was awarded to Billie Bob. Gloria was given the right to occupy the home, rent free, until September 18, 1991 (presumably until the youngest child was emancipated). Billie Bob was ordered to

---

**1.** Neither party quarrels with the difference of eight cents between the amount of interest quashed and the amount requested.

pay all taxes, maintenance costs, and assume the debt on the home.

In March 1987, Gloria arranged for new siding to be placed on the family home at a cost of $5,500. To pay for the improvement both parties executed a note and deed of trust on the home which was assigned to Fleet Finance Company. The note called for monthly payments of $91.67 for 60 months. Gloria made the payments until sometime around December 1988.

Gloria married Larry Arnold on February 3, 1989. About March 3, 1989, Gloria and Billie Bob agreed that if "he [Billie Bob] would take care of the siding that I [Gloria] had put on the house, the payment, that he would not have to pay child support...." Thereafter, Billie Bob refinanced the family home and paid the siding note in full. He made no child support payments after March 3, 1989. In order to obtain the refinancing, Gloria quitclaimed her interest in the home to Billie Bob on August 21, 1989. At the same time she executed an affidavit that Billie Bob was not delinquent in child support payments to her. Gloria testified the facts in the affidavit were untrue, but she made the affidavit because "[t]he siding company was suing me" and the bank required the affidavit before making the loan.

Relevant findings of the trial court are: (1) Billie Bob failed to pay child support ordered by the decree in the amount of $7,758.50; (2) since December 1987 Gloria has directly received one-half of the military pension; (3) between July 8, 1986, and December 1987 Gloria was entitled to receive from the military pension the total sum of $5,733.63; (4) Gloria received the benefit of $6,400 from the November 12, 1986, loan by using the same to purchase a 1982 Dodge van; (5) Billie Bob's pension was used to pay the aforementioned loan, and Gloria received benefits of that procedure which exceeded the amount due her as one-half of Billie Bob's pension for seventeen months after the decree.

Our review of this non-jury matter is under Rule 73.01(c). As that rule is interpreted, we are to affirm the trial court's determination unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law. *Sutton v. Schwartz,* 808 S.W.2d 15, 17 (Mo.App.1991).

■ Due regard is given by this court to the trial court's determination on the credibility of witnesses. Rule 73.01(c)(2). The trial court is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record. *In re Marriage of Chilton,* 576 S.W.2d 584, 585 (Mo.App.1979). The trial court may disbelieve testimony, even when uncontradicted. *Robinson v. Estate of Robinson,* 768 S.W.2d 676, 677 (Mo.App. 1989).

First, we address Gloria's appeal. She complains that the defense alleged was payment, not receipt of benefits, and the payment of her one-half of the retirement was only shown by "1) government check to be applied to loan for which only [Billie Bob] was responsible, and 2) government wire to a joint checking account of the parties after [Gloria] requested direct payment to her alone."

■ In her argument, Gloria relies principally on only one case, *Madison v. Dodson,* 412 S.W.2d 552 (Mo.App.1967). She quotes the following legal principle, with which we agree:

Proof of payment may come from inferences drawn from facts and circumstances, yet "to authorize such an inference the facts and circumstances should 'all point one way (to payment) and be inconsistent with any other reasonable hypothesis than that payment was made.'"

*Id.* at 556.

Gloria argues further that Billie Bob "failed to show payment and only circumstantially managed to show that he might be entitled to credit." She concludes by agreeing with the trial court's determination that (1) she was entitled to $5,733.63 as her half of the military retirement between July 8, 1986, and December 1987; and (2) Billie Bob is entitled to a $1,200 credit

(apparently for payment of the debt on her 1980 Ford). Amazingly, Gloria then asserts she is entitled to the balance of $4,533.63 plus interest.

We are perplexed by Gloria's reasoning. She freely admits the credit of $1,200 which Billie Bob paid from his military retirement, but vehemently denies any credit is due for her $6,400 van. The evidence was clear that the pension income paid all the monthly payments on the note from which Gloria received $6,400 to buy the van. She implies that some legal distinction exists between payment and a credit but cites no authority to that effect.

■ Her point relied on incorrectly perceives the evidence by stating only Billie Bob was responsible for the November 12, 1986, loan. In fact, both parties signed the note. The evidence is further clear that Gloria asked her attorney around December of 1987 to have her share of the pension sent directly to her. That request met with immediate success. Her actions imply acquiescence in the arrangements made for payment of the van. When Gloria decided to directly obtain her share of the pension, she was able to do so.

By our calculations, Gloria received a benefit of $7,600 from Billie Bob's pension between July 8, 1986, and December 1987. Yet, she was only due the sum of $5,733.63. We fail to see any detriment to Gloria but clearly see a windfall resulting from her actions.

■ Payment is defined as the "discharge of a pecuniary obligation by money *or what is accepted as the equivalent of a specific sum of money." Allmon v. Allmon*, 306 S.W.2d 651, 655 (Mo.App.1957) (emphasis added). Furthermore, "[p]ayment is largely a question of intention between debtor and creditor, and the question whether the transfer of money *or other thing* shall operate as a payment is ordinarily determinable by the intention of the parties to the transaction." 60 Am.Jur.2d *Payment* § 2 (1987) (emphasis added).

Application of the above principle supports the trial court findings that Billie Bob does not owe Gloria $5,733.63. Clearly, that sum was discharged by Gloria's acceptance of the van in lieu of pension payments. Her intention to do so was manifested by jointly executing the November 1986 note, accepting note proceeds for the van purchase, and by making no effort to obtain her share of the pension for seventeen months. Her point is without merit.

As to Billie Bob's appeal, he contends refusal of the trial court to quash the execution for unpaid child support erroneously declares and applies the law regarding the equitable principle of acquiescence reflected in the parties' agreement to terminate child support.

■ Billie Bob correctly states, "The law is clear that future child support obligations may not be changed by agreement between the mother and father without prior approval of the court," *citing State ex rel. Div. of Family Serv. v. Ruble*, 684 S.W.2d 949 (Mo.App.1985). He then directs our attention toward two decisions of this court, *In re Marriage of Stigall*, 756 S.W.2d 184 (Mo.App.1988), and *Dablemont v. McMinn*, 691 S.W.2d 490 (Mo.App.1985), which stand for the proposition that agreements to reduce the amount of child support, supported by consideration, when acquiesced in by the custodial parent's acceptance of the agreement over a period of time create an estoppel to a claim of the amount specified in the prior support order. We have no quarrel with that principle.

Numerous Missouri cases discuss the equitable doctrine of waiver by acquiescence. *Sanders v. Sanders*, 797 S.W.2d 874, 878–79 (Mo.App.1980); *Saeuberlich v. Saeuberlich*, 773 S.W.2d 170, 171 (Mo.App.1989); *Haynes v. Haynes*, 648 S.W.2d 895, 896 (Mo.App.1983); *Rodgers v. Rodgers*, 505 S.W.2d 138, 144 (Mo.App.1974). Application of this doctrine is based on the existence of an agreement with consideration.

■ The argument of Billie Bob is that the parties entered into a fair agreement, i.e., payment of the siding debt for termination of child support. His argument is flawed for the simple reason Billie Bob gave no consideration to Gloria. First, both parties executed the siding note so

Billie Bob was liable for its payment without regard to Gloria's liability. Second, Billie Bob testified the siding improved the value of his home. This improvement benefitted him, not Gloria. Consideration sufficient to support a contract may be either a detriment to the promisee or a benefit to the promisor. *Nat'l Advertising Co. v. Herold,* 735 S.W.2d 74, 78 (Mo.App.1987). Here, Gloria promised to terminate child support for payment of the siding debt. No benefit accrued to her. Billie Bob paid the siding debt without any detriment to him. The trial court correctly found no waiver by acquiescence. Point denied.

Because of our disposition on this point, it is unnecessary to consider Billie Bob's remaining point.

Judgment affirmed.

FLANIGAN, C.J., and MAUS, J., concur.