James E. SUTTER and Charlotte Sutter, his wife, Plaintiffs-Appellants,

v.

Bobby C. SIMS and Billie J. Sims and Ruth M. Sims, his wife, Defendants-Respondents.

No. 10414.

Missouri Court of Appeals, Springfield District.

March 6, 1978.

C. R. Rhoades, Robert W. Evenson, Pineville, for plaintiffs-appellants.

Abe R. Paul, Paul & Paul, Pineville, for defendants-respondents.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

BILLINGS, Chief Judge.

The trial court denied plaintiffs' petition for a private way of necessity across defendants' property under § 228.340, RSMo 1969. We reverse and remand with directions to enter judgment for plaintiffs.

Initially, we note that our review of this court tried case is governed by Rule 73.01, V.A.M.R., as interpreted by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). That decision tells us we are to sustain the judgment of the lower court ". . . unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." 536 S.W.2d at 32.

Plaintiffs filed their suit under § 228.340, RSMo 1969, seeking a private road from their tract of land across lands owned by defendants. In compliance with the statute, plaintiffs' verified petition alleged they were the owners of a tract of land and that no public road passed through or alongside their land; that they sought a private road over defendants' land so as to connect their land with a public road; and that the private road petitioned for is a way of strict necessity. The petition described the proposed private road and requested the court to appoint commissioners to view the premises, mark out the road, and assess damages to defendants.

The proposed road would connect plaintiffs' lands and McDonald County Highway E. The road would be fifteen feet in width and be approximately ⅜'s of a mile in length across defendants' property. Defendants' answer, in addition to denying averments of plaintiffs' petition, further alleged plaintiffs were "foreclosed from establishing an additional access across the property of the defendants and that two accesses to [plaintiffs] property already exists."

The law applicable to the establishment of a private road was reviewed by our Supreme Court in *Hill v. Kennoy, Inc.,* 522 S.W.2d 775 (Mo. banc 1975). There, in reversing a denial of a private way of necessity, the court said at 777:

"The right of a private road over the land of another exists only by way of necessity, and not convenience, *Cox v. Tipton,* 18 Mo.App. 450 (1885); *Evans v. Mansfield,* 364 S.W.2d 548 (Mo.1963).

One cannot have a way of necessity because it is more convenient than the way one has, *Vossen v. Dautel,* 116 Mo. 379, 22 S.W. 734 (1893); 72 C.J.S. Private Roads § 5, pp. 923–4. It has also been said that if the party seeking a private road has no 'legally enforceable right' to use an alternative route, he is entitled to a way of necessity, *Cox v. Tipton,* supra.".

In the *Hill* case the defendant suggested plaintiffs had at least two alternative routes over the property of other landowners by which plaintiffs could gain access from their property to a public road. However, the court found, as we do here, that plaintiffs did not have a *legally enforceable right* to use the other roads or routes and reversed the judgment of the trial court and remanded the case for the appointment of commissioners to mark out the road and assess damages as provided by § 228.340.

In 1973 plaintiffs and the Brandts purchased 640 acres of land in Sections 14 and 15 in McDonald County. In 1974 the parties divided the land. Plaintiffs' lands were located in Section 15 and the portion received by the Brandts was located in the southern part of Section 15 and in Section 14. At the time of the division plaintiffs reserved an easement across the Brandt property to "such access road as may be now in existence and such other access roads suitable for passable car traffic at such points as may be agreed upon by the parties but to be no worse than the present existing roadway."

The "present existing roadway" had its beginning at Highway E at what is called the Whittenburg Church, some distance south of plaintiffs' property. It passed through the church property, northeasterly over lands owned by Bill Staton [owned by Jesse Chapman and under contract of sale to Mr. Cousins at time of trial in 1976], then easterly some distance over the property owned by the Brandts, then north to plaintiffs' land. The distance from the church property to the Brandt property, through the Staton land, was approximately ⅜'s of a mile. At the Staton property there was a locked gate across the roadway and the realtor showing the property to plaintiffs had a key to the lock and Staton's permission to use the roadway to show the property to prospective purchasers.

After plaintiffs purchased their tract of land, they put their own lock on the gate across the roadway and used this roadway as a means of getting to their property until sometime in July of 1974. At that time plaintiffs were informed by Mr. Staton he owned that part of the roadway and re-chained the gate. Plaintiffs were unsuccessful in attempting to purchase an easement over the roadway from Mr. Staton and while negotiations for permissive use of the roadway by plaintiffs were taking place, plaintiffs obtained permission from Joe Wilson to cross his land to get to their property. The Wilson property adjoins a county road and is located east of the northeast part of plaintiffs' lands. There was no road through the Wilson property and the terrain was such that plaintiffs often walked across the Wilson land to get to their property. Thereafter, plaintiffs obtained the express permission of Mr. Staton to use the roadway across his land and later received similar permission from Mr. Chapman.

Defendants' lands border plaintiffs' property along the west side and adjoins Highway E. By permission of defendants, plaintiffs had traveled across an existing roadway over the defendants' land on several occasions to reach their land. The distance from Highway E to plaintiffs' property, via defendants' land, was approximately ⅜'s of a mile. A gate is located on this roadway at Highway E.

We will not set forth the trial court's findings and conclusions. It is sufficient to note they are nearly a verbatim extract of the St. Louis District's opinion in *Curtman v. Piezuch,* 494 S.W.2d 668 (Mo.App.1973), beginning at 671, which was expressly overruled by *Hill v. Kennoy, Inc.,* supra.

Our review of the evidence forces the conclusion that the proposed road is one of necessity and that plaintiffs do not have a legally enforceable right to use the Whittenburg roadway. Plaintiffs are landlock-

ed. Only by express permission of Staton and Chapman, Wilson and defendants, have they been able to get to and from their land from a public road. Plaintiffs' reservation of an easement over the Brandt property to get to the Whittenburg road adds nothing to their legal plight. Without a legally enforceable right to use the Whittenburg roadway from Highway E, through the church property and Staton-Chapman land, plaintiffs are legally landlocked and entitled to the benefit of § 228.340.

■ Defendants, in an effort to support the judgment of the lower court, suggest that the evidence demonstrated a prescriptive easement in plaintiffs to use the Whittenburg road. The record does not support such a prescriptive easement in plaintiffs. In order to establish such an easement, over lands of another, the evidence must establish the following: "First, used for the prescribed period; Second, that use was open, *adverse, continuous* and under a *claim of right*; Third, *notice* to the owner of the land of the use and the claim of right." *Moravek v. Ocsody,* 456 S.W.2d 619, 625 (Mo.App.1970) (our emphasis).

■ The fact that members of the public or landowners of the area had been seen using the road on occasions in the past does not alter the situation. This does not satisfy the elements necessary to give rise to a prescriptive easement. The evidence is clear that since 1966 a locked gate barred travel along the road at the Staton property line and only by permission could entry be effected.

"While plaintiffs may have a choice between surrounding landowners against whom they might have proceeded for the establishment of a private road, neither Sec. 228.340 nor the case law indicates that one landowner can defeat a plaintiff's right to a way of necessity simply by pointing to another against whom plaintiff might have sought relief." *Hill v. Kennoy, Inc.,* supra at 778.

■ We also observe, as did the Supreme Court in *Hill,* that defendants did not offer any evidence of hardship or injury should the private road over their property be granted, a consideration which may be taken into account. *Welch v. Shipman,* 357 Mo. 838, 210 S.W.2d 1008 (1948).

The judgment of the trial court is reversed and the case is remanded for the appointment of commissioners to mark out the road and assess damages pursuant to § 228.340.

All concur.