Clayton C. MAUPIN and Mary Lou Maupin, his wife, Plaintiffs-Appellants,

v.

David L. BEARDEN and Sharon K. Bearden, his wife, Defendants-Respondents.

No. 12546.

Missouri Court of Appeals, Southern District, Division Three.

Dec. 13, 1982.

Robert R. Shepherd, Lorch & Ramshur, Piedmont, for plaintiffs-appellants.

Janet K. Brown, Greenville, for defendants-respondents.

GREENE, Chief Judge.

Plaintiffs, Clayton C. Maupin, Jr. and Mary Lou Maupin, filed suit in the Circuit Court of Wayne County, Missouri, seeking to establish a private road, by reason of strict necessity, across real estate owned by defendants, David L. Bearden and Sharon K. Bearden.

The petition pleaded that the Maupins were owners of certain real estate in Wayne County, that no public road passed through or alongside their land, and, that by reason of strict necessity, it was necessary that a private road be established across the Beardens' land, which adjoined that of the Maupins', to a public road, which was Highway AA. The prayer was for a decree establishing a right to the private road in the Maupins, that commissioners be appointed to stake out the road, and to assess damages to the Beardens.

The Beardens' answer was in the nature of a general denial, with an additional allegation that the Maupins had "other and more accessible access to their property over land other than defendants' and that plaintiffs have no legal cause, justification or right to demand or request a way of necessity across defendants' property." On these issues, the battle was joined.

Plaintiffs and defendants presented evidence, after which the trial court entered the following order:

"After considering all the pleadings, evidence and proof, the Court does find as follows: Plaintiffs have not established that they are entitled as a matter of strict necessity to establish and maintain a private roadway from their property in Wayne County, Missouri, to a public roadway.

Therefore, it is Ordered, Adjudged and Decreed that the Petition filed herein by Plaintiffs be dismissed and the relief sought by Plaintiffs is hereby denied."

This appeal followed.

The Maupins contend that the trial court's judgment is not supported by substantial evidence and is against the weight of the evidence. They further allege that the evidence clearly establishes that they are entitled to a judgment in their favor, as

prayed for in their petition, as a matter of law. Plaintiffs' petition was filed pursuant to the directives of § 228.340 [1], V.A.M.S.

The only question presented here is whether the private road sought to be established was shown by competent and substantial evidence adduced at trial to be a way of strict necessity.

Plaintiffs' evidence, in chief, proved that the Maupins purchased their 155-acre tract in 1967 from Mr. and Mrs. Bill Barrett. The land was located north of AA Highway, a public highway in Wayne County, Missouri. No public road ran through or adjacent to the Maupin property. At the time that the Maupins bought their property, their only known access to it by road was to go north from Highway AA along a lane that ran through real estate owned by the Beardens. The Bearden land in question, consisting of approximately 20 acres, was south of the Maupin tract and adjoined Highway AA on its north side. The Maupins used the lane with the permission of the Beardens until 1979, when David Bearden fenced it off, and told Mr. Maupin he could no longer use the lane. At that time, Bearden informed Maupin that there were several other ways Maupin could drive to his own property. Maupin "had it checked out and nobody has been able to come up with a legal way to get into the property." It was stipulated that no county roads connected with the Maupin property. The evidence of the Maupins showed that their property was legally landlocked, as they had no legally enforceable right to use any

established private road to enter their property, and no public highway crossed or ran adjacent to their land.

The Beardens sought to counter the Maupin testimony by showing that there were four alternative routes that the Maupins could use to reach their property. These routes, for the purpose of clarification of the issues, were designated by the parties as A, B, C, and D at the argument on appeal, and are shown on the drawing below, together with the location of public Highway AA and a legend showing the location and ownership of the land traversed.

"Legend:

1: Appellants/Plaintiffs' land, purchased by Clements with (2) then to Barretts and then Appellants (Plaintiffs' Exhibit '1', Plaintiffs' Exhibit '2').

2: East Half of the Southeast Quarter, purchased by Clements with (1) and sold to Martins, then to Crites (Plaintiffs' Exhibit '2').

3. The NW Quarter of the NE Quarter, and the East Half of the NE Quarter purchased by Cooper, then to Mann and sold to Martins, then to Crites (Defendants' Exhibit 'H').

4: Purchased by Clements, who sold to Huitts, then to Wheelehons (Defendants' Exhibit 'H').

5: Respondents/Defendants' land.

NOTE: The roads shown are taken from Defendants' Exhibit 'A' and Plaintiffs' Exhibit '5'."

1. "If any person of this state shall file a verified petition in the circuit court of the proper county, setting forth that he or she is the owner of a tract or lot of land in such county, or in an adjoining county in this state, and that no public road passes through or alongside said tract or lot of land, and asking for the establishment of a private road from his or her premises, to connect at some convenient point with some public road of the county, or with any road of the state highway system within the county, in which the proceedings are had, and shall describe the place where said road is desired, and the width desired, not exceeding forty feet and

alleging that the private road sought to be established is a way of strict necessity; and if the court shall find that the allegations in said petition are true, it shall appoint three disinterested citizens who are resident householders of the county as commissioners to view the premises and to mark out the road, and to assess the damages to the owner or owners of the land through which it will pass. Any number of persons similarly situated may join in such petition; provided, however, that the proceedings shall always be had in the county in which the premises are situated over which said proposed road is to pass."

The question is not whether the Maupins had access to their land by reasonable alternative routes, other than by establishment of a private road over the land of the Beardens, but whether they had a *legally enforceable right* to use any of those reasonable alternative routes. If they did not have such a right, they are entitled to a way of necessity. *Hill v. Kennoy, Inc.,* 522 S.W.2d 775, 777 (Mo. banc 1975).

Viewed in a light most favorable to the Beardens, the evidence regarding the four alternative routes is as follows: Routes A, B and C are old logging roads that pass over the Wheelehons' property.[2] In fact, if one wishes to reach the Maupins' property by roads A or B, he must cross the separate properties of Everett Crites and the Wheelehons. If one wishes to reach the Maupins' property by route C, he would have to cross three separate properties of a Mr. Billinowski, an unnamed lady in Washington state, and the Wheelehons. Route D is a road bulldozed into existence by defendant David Bearden shortly before the trial, and passes over two properties before it reaches the Maupins' land—the property of Gene Bearden, David's cousin, and the property of Darrel Bay. Gene Bearden refused to sell the Maupins an easement over route D, and would only consider giving them a restricted easement in the future.

2. There is some preliminary conflict in the evidence presented by the defendants as to whether road C passes over part of the Wheelehons' property, but the source of that conflicting testimony, Everett Crites, finally answers the trial court's question by stating that road C passes over part of the Wheelehons' property.

Defendant David Bearden had traveled roads A, B and C with Clements, the original owner of nearly all the land over which roads A, B and C pass. Bearden last used route A in early 1981. He had to untie a cable crossing the road in order to use it, and saw a "no trespassing" sign posted on that road. Route B had a few trees dropped across it when Bearden last traveled it, and route C is a road which is used considerably, although Bearden thought that some ruts might now be washed out on it, making it impossible to drive a car over it. Bearden thought that a car could travel over roads A and B, and that he had driven up route D in a four-wheel drive pickup.

Harold Rainwater had traveled roads A, B and C, although he knew that they were private roads which were posted "no trespassing." He also knew that one of the owners (the Wheelehons) of the property that the roads traverse want no one to drive over their land. He believes that these three roads have been posted as private within the last five or six years. Rainwater knows that route B is a relatively new road, being seven years old, which connects with the old part of B that is on the Wheelehons' posted private land. Rainwater first traveled route C in 1968, but has not traveled it during the past four or five years. Part of route C has a steep hill on which Rainwater had to use a four-wheel drive vehicle.

James Haggett has been acquainted with route A for the past 15 years and used it until the Wheelehons told him approximately ten years ago to stop. The Wheelehons posted no trespassing signs on route A ten years ago. Haggett had seen nonproperty owners use route A on a regular basis before it was posted. He last used routes B and C two years ago. Both could be traveled by a two-wheel drive vehicle. Haggett knew that road D is in Reynolds County, and that the road was pretty steep, although he thought a car could travel it without difficulty.

Everett Crites has freely traveled routes A, B and C for the past 18 years, after Mr. Clements gave him permission to travel route A. Crites previously owned all the land in the areas numbered two and three in the drawing above. He presently owns only a small parcel of that land. Mr. Crites knows that the Wheelehons' land is posted "no trespassing." While he has not traveled road A for several years, Crites is aware that it is fenced off. However, Crites has not seen any signs or barricades on route C, which he uses frequently.

Defendants' exhibit H reveals that all of the land over which routes A, B and C pass once belonged to Clements, except for the land numbered three in the above drawing. So, routes A and C, as they traverse the land numbered three in the diagram above, cross land that never belonged to Clements.

Finally, most of the described uses of routes A, B, and C by property and nonproperty owners were for hunting purposes.

■ This evidence falls far short of establishing that the Maupins had a reasonably practical way to use routes A, B, C, or D to travel from their land to a public road, and had a legally enforceable right to do so. *Hill v. Kennoy, Inc.,* supra, at 777–778. The defendants' own evidence conflicts as to whether the four routes are reasonably practical ways to travel. Since none of the four routes were shown to be public roads, or deeded easements of rights-of-way, the only way for the four routes to qualify as legally enforceable rights-of-way is by prescriptive or implied easement. The record, however, fails to support a finding of either a prescriptive or implied easement by the Maupins over routes A, B, C or D. For a prescriptive easement to be established, the evidence must show (1) use for the prescribed period, (2) use that was open, adverse, continuous and under a claim of right, and (3) notice to the owner of the use and the claim of right. *Sutter v. Sims,* 563 S.W.2d 533, 536 (Mo.App.1978). In this case, there is no evidence of a prescriptive easement for a variety of reasons, including the fact that Crites' use of roads A, B, and C was by permission of Clements for an unspecified period of time; David Bearden's use was apparently permissive, since he traveled with Clements and the Clements children; Haggett stopped using road

A after five years; and, Rainwater used route C for less than ten years. In fact, there is no evidence showing any of the three elements of a prescriptive easement for any of the four routes. The fact that members of the public, or landowners of the area, had been seen using those roads on occasion in the past does not give rise to a prescriptive easement where the landowner has taken steps to bar travel over those routes and travel could only be effected by permission. *Sutter v. Sims,* supra. Defendants' own evidence establishes that the landowners, over which routes A, B and C pass, took steps to bar travel over those routes. As for route D, Gene Bearden's testimony establishes that he will not allow the Maupins to use it unless they agree to some restrictions on it, and, in any event, route D is too new for the adverse use period to be met.

▮ For an implied easement to be established, one must show that at one time there was a unity of title of the land. *Causey v. Williams,* 398 S.W.2d 190, 197 (Mo. App.1965). Defendants' evidence outlined above clearly shows that there was no unity of title in Clements in all the properties over which routes A, B, and C pass. Route D, of course, was not in existence when Clements owned the Maupins' land, and there is no evidence that Clements owned all the land over which route D now traverses. Therefore, there can be no implied easement over routes A, B, C, or D. *Causey v. Williams,* supra.

▮ There is no substantial evidence in this case to justify upholding the trial court's judgment. The judgment is also against the weight of the evidence, and must be reversed. The evidence conclusively shows that the Maupins have no legally enforceable right to enter their property on any established road, public or private, and that the most reasonable, practical way of providing access to their property would be the establishment of a private road over the Bearden land, as prayed for in the Maupins' petition.

The judgment of the trial court is reversed and the cause remanded to the trial court with directions to enter a judgment in favor of plaintiffs and against defendants as prayed for in plaintiffs' petition.

FLANIGAN, MAUS and PREWITT, JJ., concur.

**J.L.P.(H.), Petitioner-Respondent,**