Terry **DEMAREE** and Jean Demaree, Plaintiffs-Respondents,

v.

Donald **STEWART** and Nina Stewart, Defendants-Appellants.

No. 14142.

Missouri Court of Appeals, Southern District, Division Three.

Feb. 20, 1986.

John R. Hopkins, Jr., Hyde, Purcell, Wilhoit, Spain, Edmundson & Merrell, Poplar Bluff, for defendants-appellants.

Yewell G. Lawrence, Jr., Dexter, for plaintiffs-respondents.

MAUS, Judge.

This action involves two tracts of real property in Stoddard County. Tract I contains approximately 16 acres. Tract II contains approximately 10 acres. Tract I in part is contiguous with the west boundary of Tract II. Tract I is owned by the Demarees. Tract II is owned by the Stewarts. The trial court declared the existence of an easement for a driveway for the benefit of Tract I over Tract II. It found the easement had been created by implication from pre-existing use upon the severance of title to the two tracts by the common owner. The Stewarts appeal.

The elements by which such an easement by implication is created have been succinctly stated.

> [T]o create an easement by implication from pre-existing use there must be (1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance; (3) use of the premises by the common owner in their altered condition long enough before the conveyance and under such circumstances as to show that the change was intended to be permanent; and (4) reasonable necessity for the easement.

*Causey v. Williams*, 398 S.W.2d 190, 197 (Mo.App.1965). That standard has been repeated and confirmed in *Lackey v. Joule*, 577 S.W.2d 114 (Mo.App.1978), and *Dickey v. Leach*, 481 S.W.2d 524 (Mo.App.1972). See *Foxx v. Thompson*, 358 Mo. 610, 216 S.W.2d 87 (1948). See generally, 18 Missouri Practice, Hellmuth, Real Estate Law § 308 (1985).

The following are the essential findings of the trial court which form the basis for its judgment. Some findings have been paraphrased for the sake of brevity or clarification when considered with all of the findings and in the light of the pleadings and evidence.

On April 2, 1971, Tract I and Tract II were conveyed, as part of a larger tract of land, to Rodney O'Donnell and Patsy A. O'Donnell, his wife.

In the spring of 1972, the O'Donnells constructed and occupied a house on that part of the larger tract that is now Tract I. They also constructed a driveway from that house to Grant Road. That driveway extended generally northeast across Tract I and northeast for a short distance after entering what is now Tract II. Then, it proceeded north to Grant Road.

On August 8, 1972, the O'Donnells conveyed the south part of Tract II to James C. Lincoln and Judy Lincoln, his wife. In the spring of 1973, the Lincolns constructed and occupied a house on that part of Tract II. That part did not border on a public road. The Lincolns constructed a driveway across the south part of Tract II owned by them and a short distance on the north part of Tract II yet owned by the O'Donnells necessary to connect with the previously constructed driveway.

On May 16, 1973, the O'Donnells conveyed the north part of Tract II to the Lincolns. The area so conveyed had as its northern boundary Grant Road. It contained part of the driveway constructed by the O'Donnells, including that part of the driveway in dispute.

The driveway was paved in 1974, and repaved in 1978. On both occasions, the O'Donnells and the Lincolns shared the

costs of paving the driveway located on the land conveyed to the Lincolns on May 16, 1973.

Tract I does not touch any public road and the sole means of access to said property from a public road is over the driveway in dispute. The O'Donnells owned both Tract I and Tract II at the time they built the house on Tract I and when the O'Donnells constructed the driveway running from Grant Road to the house. Said driveway was openly, visibly, and obviously in use by the O'Donnells and benefiting Tract I on August 8, 1972, and May 16, 1973. The Lincolns knew of the existence and use of the driveway and that the driveway was intended to be a permanent means of access to and from plaintiffs' home. The driveway is a reasonable necessity for access to and from plaintiffs' property.

There was evidence on September 23, 1983, that Patsy A. O'Donnell (having acquired the interest of her former husband) conveyed Tract I to the Demarees.

On December 1, 1983, the Lincolns conveyed Tract II to the Stewarts. On January 12, 1984, the Stewarts' attorney, by letter, informed the Demarees the driveway would be closed to all traffic. The Demarees filed this action for an injunction and to establish an easement for the use of the driveway.

It is manifest the facts embodied in these findings establish such an easement by implication. The Stewarts dispute these findings only to the extent they do so by their two points on appeal.

Their first point is:

The court erred in finding that the creation of an easement to the driveway in question was intended by the parties concerned, because plaintiffs failed to meet their burden of proof of such intent by clear, cogent and convincing evidence of such intent, in that the only evidence of intent was that the intent of the party [sic] was to create no easement.

They argue the creation of an easement by implied grant depends heavily upon the intent of the parties. They add this intent

must clearly appear and is a "cardinal consideration." In support of these propositions, they cite *Pendleton v. Gundaker*, 381 S.W.2d 849 (Mo.1964). They state that in this case the court did not have to determine that intent from the circumstances. They point to testimony of James Lincoln that he and Rod O'Donnell had a clear understanding there would be no easement to run with the land. There was also testimony Lincoln told Rod the use of the driveway was for him and his family and could not be transferred if the house was sold. They conclude that because of this undisputed testimony of Lincoln, the plaintiffs failed in their burden of proof to establish an intent that an easement be created.

■ There is no question but that the cases state that an intent to create an easement by implication should clearly appear and is a "cardinal consideration." *Id.* However, that statement must be considered in context. "The creation of an easement by implied grant depends upon the intent of the parties concerned, which must clearly appear ... and which is the 'cardinal consideration,' ... and *that intent is to be inferred from all of the circumstances* under which the conveyance was made." *Id.*, at 851 (emphasis added; citations omitted).

■ The element of intent has been more fully delineated.

The significant factor in determining whether such an easement by implication exists is to ascertain the intention of the parties as shown by the deeds of conveyance and the general circumstances and situation with reference to the acquisition of the properties from the owner of the unity of title. The idea underlying the creation of such an easement is that the parties are presumed to have intended the grant of an easement by implication. Such a presumption can only be based on facts and this requires a resort to the record evidence.

*Causey v. Williams,* supra, at 197–198. For a similar expression see *Meinhardt v. Luaders,* 575 S.W.2d 213 (Mo.App.1978). The circumstances detailed in the findings

clearly establish a presumed intent to create an easement by implication.

█ It has been repeatedly held that an easement cannot be created by parol in the absence of an estoppel. *Allee v. Kirk*, 602 S.W.2d 922 (Mo.App.1980); 25 Am.Jur.2d Easements & Licenses § 17 (1966). The result emanating from authorities such as *Causey* and *Allee* is that the required intent cannot be established by parol, but must appear from the circumstances of the property. That being true, it has been argued that an intent to create an easement which is implied from the circumstances of the property cannot be defeated by evidence of an oral agreement to the contrary. 3 Powell on Real Property § 410 (1985). On the other hand, it has been assumed such an implied intent can be defeated by an express oral agreement to the contrary. *Lackey v. Joule, supra*. The authorities are divided. Annot., Implied Easement—Parol Evidence, 165 A.L.R. 567 (1946). However, that issue need not be further discussed or decided.

Considered as a whole, the testimony of Lincoln was not clear and self-serving. For example, in one answer he volunteered:

A. ... That there was some discussion at that time, and the reason there was some discussion is because I didn't want any development along there—

Q. Uh-huh.

A. —and that I would allow him to use the road and his family, but there was no permanent easement and that's the discussion—I would not give one, period.

When asked when the discussion took place, he said when he purchased the northern tract and added: "[B]ut we just had a type of an understanding, agreement, that he and his family could use it as long as he lived there and as long as I lived in my house. But it was not, again, *let me state for my benefit*, no permanent easement was given and he understood that when he sold the four acres." (Emphasis added).

The trial court could believe or disbelieve all, part or none of the testimony of any witness even though that testimony is not contradicted. *Gee v. Gee*, 605 S.W.2d 815 (Mo.App.1980). As in *Lackey*, the trial court "did not find an agreement that an easement by implication would not be created, but rather affirmatively found that such an easement had been created. It has already been demonstrated that the evidence fully supports such a finding and that the court apparently did not believe the testimony regarding the alleged oral agreement." Id., at 117. The Stewarts' first point is denied.

Their second point is the "plaintiffs failed to meet their burden of proof as to reasonable necessity by clear, cogent and convincing evidence of such necessity, ...." To support that point the Stewarts state the only evidence on this point is that "Terry Demaree was allowed to answer the question, over defendants' objection, 'Is the continued use of the drive across the Stewart's land, reasonably necessary for the enjoyment of your property?' Mr. Demaree's answer was that it is the only drive to the house to get to Grant Road." They argue this was not proof of reasonable necessity because "[t]his was only a conclusion by Demaree, and he testified to no facts that would establish such a conclusion."

█ This point has no merit. The requirement of reasonable necessity was satisfied when it was shown there was no other access except over the tract conveyed or the land of another. 3 Powell on Real Property, supra; *Sutter v. Sims*, 563 S.W.2d 533 (Mo.App.1978). The point is denied and the judgment is affirmed.

CROW, P.J., and FLANIGAN, J., concur.