RAY KLEIN, INC., d/b/a Professional Credit Service, Assignee of U.S. Bank, N.A., Plaintiff–Appellant,

v.

David KERR and Tina G. Kerr, a/k/a Tina G. Mease, Defendants–Respondents.

No. SD 28850.

Missouri Court of Appeals, Southern District, Division One.

Dec. 16, 2008.

David H. Bailey, Jr., St. Peters, MO, for Appellant.

Respondents Acting Pro Se.

JEFFREY W. BATES, Judge.

Plaintiff Ray Klein, Inc. d/b/a Professional Credit Service (PCS) appeals from a judgment in favor of defendants David Kerr and Tina Mease (hereinafter referred to collectively as "Defendants" and individually by their surnames). The trial court ruled in Defendants' favor because PCS failed to prove that it was the assignee of the debt upon which suit was brought. On appeal, PCS argues that the court's finding as to Kerr was against the weight of the evidence.[1] This Court affirms.

In this court-tried case, appellate review is governed by Rule 84.13(d).[2] The

---

1. On appeal, PCS has not challenged the court's ruling in favor of Mease.

2. All references to rules are to Missouri Court Rules (2008). All references to statutes are to RSMo (2000).

judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ewanchuk v. Mitchell,* 154 S.W.3d 476, 478 (Mo.App.2005). "An appellate court exercises extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong." *Simpson v. Strong,* 234 S.W.3d 567, 578 (Mo.App.2007). The phrase "weight of the evidence" means its weight in probative value, rather than the quantity or amount of evidence. *Nix v. Nix,* 862 S.W.2d 948, 951 (Mo.App.1993). The weight of the evidence is not determined by mathematics, but depends on its effect in inducing belief. *Id.*

■■■ The trial court's judgment is presumed correct, and PCS has the burden of proving it erroneous. *Surrey Condominium Ass'n, Inc. v. Webb,* 163 S.W.3d 531, 535 (Mo.App.2005). On appeal, this Court views the evidence and all reasonable inferences in the light most favorable to the judgment and disregards all contrary evidence and inferences. *Strobl v. Lane,* 250 S.W.3d 843, 844 (Mo.App.2008). The credibility of the witnesses and the weight to be given to their testimony is for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Christian Health Care of Springfield West Park, Inc. v. Little,* 145 S.W.3d 44, 48 (Mo.App.2004). Our summary of the evidence presented at trial, which is set forth below, has been prepared in accordance with these principles.

On October 9, 2006, PCS filed suit against Kerr and Mease in the Associate Division of the Circuit Court of Stone County, Missouri. The third paragraph of the petition alleged that Defendants had executed a promissory note and security agreement that was later assigned to U.S. Bank, N.A. (U.S. Bank). A copy of the promissory note and security agreement, which had been executed by Kerr and Mease in connection with the purchase of an automobile from Reliable Chevrolet, was attached to the petition. The seventh paragraph of the petition alleged that U.S. Bank had assigned all of its rights, title and interest in the debt to PCS.

Defendants were each served on November 1, 2006. In their answer, they admitted the allegations in the third paragraph of the petition, but they denied the allegations in the seventh paragraph due to lack of information. In addition, Defendants specifically alleged that they had no duty or obligation to pay any sums to PCS because it was not the assignee of the promissory note.

According to the certificates of service, PCS mailed separate requests for admissions to Kerr and Mease on December 6, 2006. In paragraph 1.I. of each request for admission, each individual defendant was asked to admit that "Plaintiff received by valid assignment all the rights of the original creditor pursuant to the Promissory Note...." Defendants' responses were due on January 5, 2007. Rule 59.01(d)(1). Neither Kerr nor Mease filed a response to the requests for admissions by that date.[3]

The case went to trial on April 26, 2007. PCS appeared by counsel. Defendants appeared in person and by counsel. PCS' counsel offered five exhibits into evidence. Exhibit 1 was an affidavit by Fran Amato (Amato), the manager of PCS' legal department, which had been executed on No-

---

**3.** On February 14, 2007, Mease filed an untimely response without leave of court. In that response, she denied paragraph 1.I. of the request.

vember 27, 2006. In relevant part, Amato's affidavit stated:

2. [Defendants'] U.S. Bank account referenced above (hereinafter "the Credit Account") was purchased for value by Professional Portfolio Service, LLC. As legal owners in due course, Professional Portfolio Service, LLC assigned the Credit Account to Plaintiff for collection.

3. The scope of my job responsibilities include the supervision or oversight of credit account records maintained by Plaintiff, including the Credit Account referenced above. In the performance of my duties for Plaintiff, I am familiar with the manner and method by which Plaintiff creates and/or maintains its normal business books and records, including computer records and/or the date of the purchased accounts, in the ordinary course of business. As such, I am the custodian of said business records.

4. Attached hereto are *10* pages of records from Plaintiff which are kept and maintained under my control and supervision in the regular course of business, and it was the regular course of business of Plaintiff's employees or representatives of the company with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the records or transmit information thereof to be included in such record, and the record was made at or near the time of the act, event, condition, opinion, or diagnosis. The attached statement of account(s) and supporting documentation are business records of such company so kept, and such statement(s), as well as the various items thereof, are within my personal knowledge just, true, and

correct, and are the originals or exact duplicates of the originals.

There were ten pages of records attached to Exhibit 1. The first record was a copy of a nine-page document titled "CHARGED–OFF ACCOUNT PURCHASE AGREEMENT" between U.S. Bank and Professional Portfolio Services, LLC (PPS). This document, which had been executed in August 2005, confirmed that Defendants' debt was one of the charged-off accounts that had been purchased by PPS. The second record, however, was a one-page letter from PCS to PPS *dated March 13, 2007* requesting that PPS assign Defendants' debt to PCS. The letter appears to bear the signature of a PPS officer purportedly assigning the debt to PCS.

Exhibit 2 was another affidavit that Amato executed on November 27, 2006. Paragraphs two, three and four of this affidavit were virtually identical to those found in Exhibit 1. The copied records attached to this exhibit consisted of a vehicle service agreement for Defendants' vehicle, a title application, a vehicle certificate of origin, a credit application, the promissory note and security agreement and a U.S. Bank account statement showing the payment history on the account. Thus, Exhibit 2 contained no documents tending to corroborate the statement in the second paragraph of the affidavit that Defendants' account had been assigned to PCS as of November 27, 2006.

The final three exhibits all related to PCS' requests for admissions to Defendants. Exhibits 3 and 4 were copies of the admissions directed to Mease and Kerr, respectively. Exhibit 5 was the certificate of mailing showing that said requests had been mailed to Defendants on December 6, 2006. These comprehensive requests for admissions covered every element of PCS' case, including its status as the assignee of the debt upon which suit was brought.

PCS' counsel took the position that, because neither Kerr nor Mease had filed a timely response, counsel was entitled to place Exhibits 3–5 in evidence by reading the requests into the record or by having the court take judicial notice of the contents of the requests.

After PCS' counsel offered the five exhibits, Defendants' counsel made the following argument concerning Exhibit 1:

> [H]ere's the miraculous thing: As to [Exhibit 1], which deals with the issue of whether or not there was a valid assignment, I don't know how the notary and the person executing it can be so clairvoyant that on November 27, 2006, they're notarizing the accuracy of the document that contains on the final page a document dated March 13, 2007. So while they may be admissible as to form, I think this Court has the right to determine the credibility and the weight to be given to those documents. And very clearly ... [Exhibit 1] could not have been executed properly, in proper form, unless you have a notary and the person executing it in November of 2006, and they anticipate a March 13, 2007 letter. And that document, if the Court gives no credibility to that document, that's the document that establishes whether this claim was ever properly assigned to; and, therefore, that [PCS] has any standing to be bringing this lawsuit.

PCS' counsel made the following response:

> [PCS' counsel]: Judge, you know, the— Well, the response to that—to that issue, I acknowledge, is the fact that I failed to include the first time the documents when they were sent. I did not go back and get another affidavit from my client, Judge, after they sent me the documents, so yeah, I mean, I sent it in two different parts, and I acknowledge that. . . .

Thereafter, PCS' counsel and the trial court discussed Mease's untimely response. The court decided to allow Mease to file her response out of time, and PCS' counsel voiced no objection to that decision. Defense counsel then stated that Kerr had not received the request for admission propounded to him and, if he had, he would have responded in the same way as Mease. Thereafter, the trial court and counsel engaged in a lengthy colloquy discussing the legal issues in the case. Defense counsel noted that Defendants were challenging PCS' right to bring the case because there had been no proper proof that it was the assignee of the claim upon which the suit was based.

At the conclusion of that colloquy, there was an off-the-record discussion. When the record resumed, all five of PCS' exhibits were admitted in evidence. The trial court then inquired whether defense counsel's factual statements during the earlier parts of the hearing could be considered as evidence on behalf of Defendants. PCS' counsel voiced no objection to the court doing so, and the case was taken under advisement.

In October 2007, the court entered judgment in Defendants' favor for the following reason:

> The plaintiff seeks a judgment arising out of the defendants' failure to pay a secured promissory note payable to U.S. Bank, N.A. Plaintiff claimed it was the assignee of the debt, and in support of its claim, plaintiff filed a business records affidavit dated November 27, 2006, verifying the claim assignment. The attached Assignment of Debt document, however, was dated March 13, 2007.

This appeal followed.

■ "In a suit on a promissory note a prima facie case is made when the note, admittedly signed by the makers, is introduced and evidence follows demonstrating the note is unpaid or that a balance is due and owing." *Bank of Kirksville v. Small,* 742 S.W.2d 127, 130 (Mo. banc 1987). In

Kerr's answer, he admitted executing a promissory note payable in installments to the order of Reliable Chevrolet. This note was admitted in evidence as a part of Exhibit 2, which also included proof of the balance due and owing. At trial, PCS took the position that it was entitled to sue on the note pursuant to an assignment, for collection purposes, from PPS. Therefore, proper proof of PCS' status as the assignee of the note was an essential element of its claim. *See* § 425.300 (allowing collection agencies to take an assignment of claims in their own names for the purposes of billing, collection and bringing suit); *Midwestern Health Management, Inc. v. Walker,* 208 S.W.3d 295, 298 (Mo.App. 2006) (when a plaintiff sues on an account accruing to another in his own right, proof of an assignment of the account is essential to recovery).

■ In PCS' lone point on appeal, it contends the trial court erred in entering judgment in Kerr's favor because it was against the weight of the evidence. PCS argues that its status as the assignee of the debt upon which it sued was conclusively established by Kerr's failure to file a timely response to PCS' request for admissions. This Court disagrees.

Because this civil action was filed in the associate division of the Stone County Circuit Court, Rule 59.01 was applicable. *See* Rule 41.01(d); § 517.021. PCS' argument is based upon Rule 59.01(b), which states that "[a]ny matter admitted under this Rule 59.01 is conclusively established unless the court permits withdrawal or amendment of the admission." That argument lacks merit for two reasons.

First, this subpart of Rule 59.01 is subject to an important caveat that is applicable in the case at bar. As the western district of this Court explained in *Killian Constr. Co. v. Tri–City Constr. Co.,* 693 S.W.2d 819 (Mo.App.1985), "[a]n adversary who adduces evidence on an issue which tends to disprove his own case does not rely upon the admission of the adversary. The evidence then becomes disputed, and the issue is for the trier of fact." *Id.* at 827–28 (citation omitted). This same, well-established principle has been applied to judicial admissions and admissions in a pleading. *See, e.g., Vaughn v. Michelin Tire Corp.,* 756 S.W.2d 548, 557 (Mo.App. banc 1988); *Jenni v. Gamel,* 602 S.W.2d 696, 699 (Mo.App.1980); *Plemmons v. Pevely Dairy Co.,* 241 Mo.App. 659, 233 S.W.2d 426, 434 (1950).

In the case at bar, PCS took the position that Defendants had admitted every paragraph in the requests for admissions propounded to them due to their failure to file a timely response. Each defendant's request included an admission that PCS had a valid assignment of the debt upon which suit was brought. Nevertheless, PCS chose not to rely on these admissions to prove the assignment. Instead, Exhibit 1 was the very first exhibit offered by PCS. The only relevance of Exhibit 1 was to directly prove the assignment via the documents by which it had been accomplished. Unfortunately, this exhibit tended to disprove PCS' own case.

The October 2006 petition alleged that PCS was, at that time, the assignee of the debt upon which suit was brought. The Amato affidavit in Exhibit 1 had been executed on November 27, 2006. She swore that, as of that date, Defendants' debt had been assigned to PCS. That statement was based upon her review of PCS' own business records, which were attached to the affidavit. The attached records in existence as of November 27, 2006 only proved an assignment of the debt from U.S. Bank to PPS. There was no attached record in existence as of that date tending to show an assignment from PPS to PCS. Instead, that purported assignment was exclusively described in the March 2007 letter. Obviously, Amato could not have authenticated

this letter because it was not in existence when her affidavit was executed. The trial court also could have inferred from the statements of PCS' counsel that someone had attached this unauthenticated letter to the earlier Amato affidavit before Exhibit 1 was offered in evidence. Thus, the trial court would have substantial reason to question the authenticity of the March 2007 letter because: (1) this document had not been authenticated by anyone; (2) the letter was inconsistent with the allegations in the October 2006 petition that Defendants' debt already had been assigned to PCS; and (3) the letter was inconsistent with Amato's November 27, 2006 sworn statement that Defendants' debt already had been assigned from PPS to PCS.

Because PCS chose to offer Exhibit 1 as direct evidence of the assignment and that exhibit tended to disprove PCS' case, PCS did not rely upon Kerr's admission to prove PCS' status as the assignee of the claim upon which suit was brought.[4] Once Exhibit 1 was admitted, PCS' status as assignee became a disputed factual issue for the trial court to decide. *Killian Constr. Co.*, 693 S.W.2d at 827–28. The court resolved that factual issue against PCS. That finding is not against the weight of the evidence.

■■ Second, it is clear that the trial court did not treat Kerr's failure to respond to the request for admissions as conclusively establishing PCS' status as a valid assignee of Defendants' debt. As noted above, defense counsel told the judge that Kerr never received the request for admissions propounded to him and that, if he had, he would have responded the same way as Mease. When the court asked if it could consider such factual

statements as evidence, PCS' counsel did not object. Defense counsel's statements could have been interpreted by the court as an implied motion to withdraw the admissions and file a late response, which the judge had the discretionary authority to grant. *See Duna Commercial Credit Corp. v. Cukjati*, 880 S.W.2d 612, 615 (Mo. App.1994). Having acquiesced in that procedure, PCS is in no position to complain on appeal. *See, e.g., Barnes v. Morris Oil Co.*, 263 S.W.3d 697, 702 (Mo.App.2008) (a party may not complain on appeal of an alleged error in which he joined, acquiesced or invited by his conduct at trial).

PCS' point on appeal is denied, and the judgment of the trial court is affirmed.

BARNEY, J., and SCOTT, P.J., Concur.

---

4. It is also worth noting that, after Exhibit 1 was offered and before it was admitted, the trial court allowed Mease to withdraw her admissions and file a response out of time. That response specifically denied Defendants' debt had been validly assigned to PCS. Therefore, it had to rely upon Exhibit 1 to prove the assignment of the debt in order to prevail on the claim against Mease.