**Dwain MALLORY, Plaintiff–Respondent,**

v.

**TWO–BIT TOWN, INC., et al., Defendants–Appellants.**

**No. SD 28986.**

Missouri Court of Appeals, Southern District, Division Two.

March 16, 2009.

Donald M. Brown, Bolivar, MO, for Appellant.

Dennis D. Reaves, Stockton, MO, Respondent.

DON E. BURRELL, Presiding Judge.

Two–Bit Town, Inc. and Anthony and Myrna Kay McMurray (collectively, "Appellants") appeal a judgment granting to Dwain Mallory ("Respondent") an implied easement for ingress and egress across Appellants' property. Because we find Respondent failed to present any probative evidence in support of one of the necessary elements of his claim, we reverse and remand.

## I. Facts and Procedural Background

Viewed in the light most favorable to the judgment, *Ray Klein, Inc. v. Kerr*, 272 S.W.3d 896, 898 (Mo.App. S.D.2008), the evidence is as follows. Prior to 1955, J.W. Pate and his wife owned a parcel of land outside the city limits of Stockton, Missouri. In 1955, the Pates transferred one acre, referred to as the "Slaughterhouse Property," to T.J. and Mary Hannigan. In their deed to the Hannigans, the Pates reserved an express easement "along the South part of said tract of land 20 ft. wide." The southern part of the Slaughterhouse Property was adjacent to Highway 32. There was no evidence to indicate that there had ever been a road along the entire south part of the Slaughterhouse Property. Instead, the Slaughterhouse Property had access to Highway 32 by means of a road that commenced in the approximate center of the property and traveled in a southwesterly direction to the highway across property still owned by the Pates.

Eddy Johnson, the Cedar County Assessor, testified that the road between the slaughterhouse and the highway had been in existence since he was a kid, which "might be 50 years" ago. He further testified that the road was used to get from the highway to the Slaughterhouse Property. Johnson also testified that a "road whistle" was eventually put in that gave the Slaughterhouse Property direct access to the highway without having to cross the Pates' land, but he could not remember when that had occurred.

In 1967, the Pates transferred approximately 15 acres located to the north and west of the Slaughterhouse Property to the Masons. In 1971, Don Feese and his wife bought that property from the Masons. Don Feese[1] had the property he purchased from the Masons surveyed with an eye toward dividing the land nearest the highway into nine separate lots, but the survey was never recorded. Feese also planned to build a small amusement park on the property, but it was never constructed.

---

1. Don Feese and his wife had divorced in the interim, and the property at issue was apparently awarded to Don Feese ("Feese") in the dissolution.

Beginning in 1976, Feese proceeded to sell off various portions of his property.[2] Feese first sold Lots 5 and 6 to his brother, Eugene Feese. In 1977, Feese sold Lots 7, 8, and 9 to Rex Arment.[3] Feese then transferred the unsold remainder of his property, including a 60–foot–wide strip lying between the nine lots and the highway, to Feese Real Estate, Inc. Although Feese retained the 60–foot–wide strip between the nine lots and the highway, at the time Respondent filed his petition, none of the deeds from Feese to his various buyers granted them any easement rights that would allow them to cross his land to access the highway.[4] All of the property we have referred to—with the exception of the Slaughterhouse Property and the property now owned by Respondent—eventually ended up in the ownership of Two–Bit Town, Inc., a corporation owned by Feese's trust. Afterwards, Two–Bit Town, Inc. transferred Lots 1, 5 and 6 to Gary and Vickie Lewis who later transferred the property to the McMurrays in satisfaction of a debt.

In summary, at the time of trial, Respondent owned Lots 7, 8, and 9. Two–Bit Town, Inc. owned a 60–foot–wide strip of land ("Strip I") between Lots 7, 8, and 9 and the highway. The McMurrays owned a 60–foot–wide strip of land ("Strip II") located adjacent to the west side of Two–Bit Town, Inc.'s property and between some of the other nine lots and the highway. Two–Bit Town, Inc. also retained ownership of the 60–foot–by–161–foot strip that lies between Respondent's property and the highway. The Slaughterhouse Property borders the highway and is adjacent to both Strip I and Lot 9.

The "road"[5] which Respondent claims gives him the right to receive an implied easement consistent with its path commences at the edge of Highway 32, in Strip II, crosses Strip I at an angle, and ends in the middle of the Slaughterhouse Property. It does not connect to Respondent's property.[6] After Respondent filed his petition and before the trial of this matter commenced, Two–Bit Town, Inc. granted Respondent an easement running north and south along the eastern edge of Strip I.

## II. Standard of Review

This case was tried to the court without a jury. The trial court's ruling in a bench trial will be upheld "unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Van-*

2. These sales of land were actually accomplished using metes and bounds descriptions as no formal plat had ever been filed. At trial, the parties both referred to these various parcels as "lots," but used two different numbering systems. For ease of description, we will also refer to the various parcels as "lots" and use the numbering system contained in Plaintiff's Exhibit E.

3. Respondent purchased Lots 7, 8, and 9 from Arment in 2001.

4. In spite of this, Respondent's petition specifically sought an implied easement and did not request an easement by necessity on the grounds that he was "land-locked."

5. While an older aerial photograph taken while the Slaughterhouse was still in operation seems to indicate the track at issue was graveled at one time, the photographs of it at the time of trial showed it to be a rutted set of parallel tire tracks in the grass—excepting a short, graveled portion that remained where the track meets the highway in Strip II.

6. It is difficult to tell from the evidence whether the track actually touches Respondent's property or not. If it does not, Respondent did not present any evidence as to how he was going to legally gain access to the route he claims for his implied easement. As this issue was not raised as an allegation of error by Appellants, we do not address it.

*Cleve v. Sparks,* 132 S.W.3d 902, 905 (Mo. App. S.D.2004). We accept the trial judge's credibility determinations and view the evidence in the light most favorable to the judgment and disregard all contrary evidence and permissible inferences. *Classic Kitchens & Interiors v. Johnson,* 110 S.W.3d 412, 414 (Mo.App. S.D.2003). We must exercise caution before finding a judgment to be against the weight of the evidence because assigning weight to the evidence is a matter for the trial court. *Petrol Properties, Inc. v. Stewart Title Co.,* 225 S.W.3d 448, 453 (Mo.App. S.D.2007).

### III.  Discussion

Appellants assert the trial court erred by: 1) denying their Motion to Dismiss Respondent's Petition for Failure to State a Claim because Respondent's Petition failed to allege sufficient facts that, when taken as true, would establish the elements of an implied easement; 2) applying a preponderance of the evidence standard when it should have applied the more stringent standard of clear and convincing evidence; and 3) entering a judgment that was not supported by substantial evidence, was against the weight of the evidence, and erroneously declared or applied the law.  We will discuss each point of alleged trial court error in turn.

■■■  A trial court's denial of a motion to dismiss is not a final judgment and is not reviewable on appeal. *Lesinski v. Joseph P. Caulfield & Associates, Inc.,* 12 S.W.3d 394, 396 (Mo.App. E.D.2000). If Appellants wanted to contest the denial of their motion to dismiss, the proper course of action would have been to seek a writ of prohibition. *State ex rel. Union Electric Company v. Dolan,* 256 S.W.3d 77, 82 (Mo. banc 2008).  Appellants did not seek a writ, and this case was resolved by trial. Point I is denied.

■■■  Appellants next claim the trial court erred because it applied a preponderance of the evidence standard instead of the applicable—and more stringent—standard of clear and convincing evidence. We initially note that Appellants are correct about the proper standard of proof. "The party seeking to demonstrate the existence of an implied easement bears the burden of demonstrating the existence of all four prerequisites by clear and convincing evidence." *Russo v. Bruce,* 263 S.W.3d 684, 687 (Mo.App. S.D.2008).  In this case, however, if the trial court actually did employ the lower preponderance of the evidence standard in reaching its decision, Appellants cannot complain.  In their pre-trial motion requesting findings of fact and conclusions of law, Appellants requested that the trial court determine if Respondent had proven each of the elements of his claim by a preponderance of the evidence.  "It is settled law that a party may not complain on appeal of an alleged error in which he joined, acquiesced or invited by his conduct at trial." *Barnes v. Morris Oil Co.,* 263 S.W.3d 697, 702 (Mo. App. S.D.2008).  Point II is denied.

■■■  Appellants' third point claims the trial court erred because its judgment was not supported by substantial evidence, was against the weight of the evidence, and erroneously declared or applied the law in that:

Respondent failed to submit substantial evidence to support a finding that there was unity of title in Don Feese in all of the properties over which the purported easement passes; and in that Respondent failed to submit substantial evidence to support a finding that the purported easement was an obvious benefit to his property and burden to the Appellants' property existing at the time of conveyance; and in that Respondent failed to submit substantial evidence to

support a finding that the premises were used by a common owner in their altered condition before the conveyance in such a manner as to establish an intention for the establishment of the purported easement; and in that Respondent failed to submit substantial evidence to support a finding that the purported easement was reasonably necessary; and in that the trial court's finding that an existing legal access was irrelevant to the issues of an implied easement was not in line with Missouri law.

■ To establish his claim to an implied easement, Respondent was required to prove four elements:

(1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance; (3) use of the premises by the common owner in the altered condition long enough before the conveyance under such circumstances as to show that the change was intended to be permanent; and (4) reasonable necessity for the easement.

*Russo,* 263 S.W.3d at 687. Apparently, Appellants challenge each of these elements. Because we find merit in Appellants' claim that no substantial evidence was adduced in support of at least the third element, we must reverse the judgment for that reason and will not address the sufficiency of the evidence relating to the other three elements.

" 'Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case.' " *Kenney v. Wal–Mart Stores, Inc.,* 100 S.W.3d 809, 814 (Mo. banc 2003) (quoting *Zeigenbein v. Thornsberry,* 401 S.W.2d 389, 393 (Mo. 1966)). Whether the evidence in a particular case is substantial is a question of law the court reviews *de novo. Id.* (citing *Probst v. Seyer,* 353 S.W.2d 798, 802 (Mo. 1962)).

The only testimony regarding the use of the track came from the Cedar County Assessor,[7] who upon being shown an aerial photograph of the property and being asked about what it depicted stated: "It was a road that used to lead to the Slaughter House that they used."[8] The assessor did not specify who constituted the "they" he was referring to, but when this particular testimony is considered in its context, it is clear that the "they" he referred to were the customers of the slaughterhouse. This statement is not probative evidence as to use of the track by the common owner.

■ The equitable foundation for the legal recognition of an easement by implication is the principle that "what is good for the goose is good for the gander;" that a property owner who has himself been using a particular route across his property to access a portion of it now sold to another cannot equitably deny his buyer that same use. Here, there is no evidence showing any use by Appellants of the route at issue and the judgment must be reversed for that reason. However,

---

**7.** Feese, who lived elsewhere and had never actually improved the land at issue, specifically denied that he had ever used the track. The trial judge, of course, was free to disbelieve this testimony and we do not consider it in our analysis as it was not favorable to the verdict.

**8.** While this older aerial photograph taken while the Slaughter House was still in operation seems to indicate that the track at issue was a gravel road at one time, the photographs taken of it at the time of trial show it to now be a rutted set of parallel tire tracks in the grass—excepting a short, graveled portion that remains where the track meets the highway.

"[w]here a plaintiff prevails in the trial court and an appellate court reverses because of insufficient evidence[,] the preference is for remand for a new trial. Reversal without remand is appropriate only if the appellate court is persuaded the plaintiff cannot make a submissible case on retrial." *Allstates Transworld Vanlines, Inc. v. Southwestern Bell Telephone Co.*, 937 S.W.2d 314, 319 (Mo.App. E.D.1996) (citing *Moss v. Nat'l Super Mkts., Inc.*, 781 S.W.2d 784, 786 (Mo.1989)).

As it does not appear that proof of prior use of the proposed easement by the common owner would be impossible to adduce, the judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.

RAHMEYER, J., Dissents.

SCOTT, J., Concurs in result.

PARRISH, J., recused.

NANCY STEFFEN RAHMEYER, Judge, dissenting.

I respectfully dissent as I believe substantial evidence supports all four of the elements necessary for an implied easement. First, I believe, in the light most favorable to the judgment, we must accept that there was a "road," not a track commencing on Highway 32 in Strip II, crossing Strip I, and ending in the Slaughterhouse Property. The testimony of the Cedar County Assessor alone provides substantial evidence of that fact. Next, I believe we must accept as true, as the evidence indicated, that there is no ingress or egress to Respondent's property from Highway 32 created by easement provided by Appellants after the lawsuit commenced as the testimony indicated safety and visibility problems would ensue on any access to Highway 32. Finally, there was only one access area to Highway 32 in what was the original Feese

property, the road at issue here. Appellant has challenged, in his point relied on, all four elements of the implied easement. I believe substantial evidence supports each of the four elements.

Feese acquired all of the property at issue from the Masons in 1971. This would seem to satisfy the first element. Appellants, however, argue that there is no substantial evidence to find unity and subsequent separation of title because a portion of the road Respondent claims as an easement passes over the Slaughterhouse Property, which was separated from the property before Feese purchased and subdivided it. Appellants claim that Respondent must show unity of title in all of the properties over which the purported easement route passes. Appellants claim they are supported by *Maupin v. Bearden*, 643 S.W.2d 860 (Mo.App. S.D.1982). In *Maupin*, the easement seeker sought to establish four separate implied easement routes. *Id.* at 862. The easement seeker needed to travel the entire length of any of the proposed routes to reach his property. *Id.* at 864. The court found that all four proposed easements failed to meet the unity of title requirement because the easement seeker could not show unity of title for all of the properties over which the routes passed. *Id.* at 865.

Unlike the easement seeker in *Maupin*, Respondent's property is located at a point on the proposed easement route that is before the Slaughterhouse Property. Respondent, therefore, does not need to travel over the portion of the easement that continues onto the Slaughterhouse Property. Any unity of title concern which includes the Slaughterhouse Property is not at issue here. Substantial evidence supports the first element.

As to the second element, that there was an obvious benefit to the dominant estate

and burden to the servient portion of the premises existing at the time of conveyance, Feese created nine lots but there was only one entrance on his property from the highway. The road was a benefit to the nine lots because it provided an entrance from the highway, which allowed access between the highway and the nine lots. It was a burden on Two–Bit Town, Inc.'s land because the road ran across it. Viewed in the light most favorable to the judgment, the court could have found that Feese would have the only driveway on his property to access the nine lots he subdivided. The trial judge could have also believed that the entrance and road was used for access to Feese's proposed miniature golf course. There is substantial evidence to support a finding on the second element.

Appellants contend, and the majority opinion finds, there is no evidence supporting use by the common owner in the altered condition. I disagree. At the time of Feese's purchase of the property in 1971, the Slaughterhouse Property had been in existence for fifteen years and the road to the Slaughterhouse Property was in place. It was Feese who subdivided the property into nine lots, three of which are now owned by Respondent. It was Feese who created a plat, even though it was not filed. Feese initially sold Lots 7, 8, and 9 to Rex Arment. A reasonable inference is that Feese, or someone on his behalf, entered the property at some time to create the plat, even if it was never filed, or showed the property in order to sell it to the Arments.

Furthermore, the testimony of the Cedar County Assessor does support that Feese used the property. Although the assessor does not clarify who "they" refers to in his testimony, viewed in the light most favorable to the judgment, when combined with the fact that there was only one access to the property from Highway 32, a reasonable inference is that the common owner of the property used that only road to his property. The court specifically noted, "[a]erial photographs and other pictorial exhibits clearly show the physical appearance of the roadway." Because the roadway had been in existence for at least 50 years, which included times of common ownership, and it was clearly visible, the court had substantial evidence to conclude that the common owner used the roadway. The trial court's judgment finding that Respondent has shown use by a common owner is supported by substantial evidence.

Finally, the last element is reasonable necessity for the easement. An absolute necessity is not required to satisfy this element. *Russo v. Bruce,* 263 S.W.3d 684, 687 (Mo.App. S.D.2008). In this case, the trial court found that "[a]ny other ingress or egress to Highway 32, besides the two entrances at either end of the roadway, is not feasible or practical, and presents an undue burden on [Respondent's] access to his property." This leaves Respondent with two ways to access his property: using the entrance and road across Appellants' property or using the entrance and road across the Slaughterhouse Property. Respondent testified that the use of the entrance on the Slaughterhouse Property caused safety and visibility problems. In *Full Gospel Fellowship v. Stockwell,* 938 S.W.2d 677 (Mo.App. E.D.1997), the court stated, "[t]he trial judge could also find the element of necessity because any alternate route to the highway would be less safe." *Id.* at 678. Viewing the evidence in the light most favorable to the judgment, Respondent has demonstrated reasonable necessity.

I see no need to remand the case for a trial to produce direct proof that the roadway was used by the common owner and

would find there is substantial evidence to support the trial judge's judgment granting an implied easement across Appellants' property and affirm the judgment.

**DANIEL E. SCOTT, Judge, concurring in result.**

I agree in part with each of the other opinions, and that we should reverse and remand as opposed to reversing outright.

Not all cases express a requirement to prove *a common owner's* prior use, which is part of what we are calling the third element of an implied easement claim, and is the basis for reversal under Judge Burrell's opinion.[1] If we are reversing the judgment based on a more demanding of several reported legal standards,[2] as I believe we are, we should remand to give Respondent a chance to meet such standard, unless doing so would be futile.

Ultimately, I believe remand is proper because I agree with Judge Rahmeyer (although for slightly different reasons) that Respondent otherwise proved his claim - *i.e.*, what we are calling the first, second, and fourth elements, each of which Appellant also has attacked on appeal.[3] Thus, I would concur in the result.

---

1. Such include the case cited and relied on by Respondents *(Full Gospel Fellowship v. Stockwell,* 938 S.W.2d 677, 678 (Mo.App.1997)), and others, including at least one by this court. *See Main Street Feeds, Inc. v. Hall,* 975 S.W.2d 227, 234 n. 6 (Mo.App.1998).

2. Given our decision to remand, I agree with applying the more stringent standard and reversing the judgment. The "clear and con-

vincing" proof required for implied easements suggests, as I believe, that they are judicially disfavored.

3. I considered Appellant's remaining challenges because if any were well-taken, such that Respondent could not prevail in any event, I think remand would be an exercise in futility, waste of judicial resources, and disservice to the parties.